**Ralph BULLOCK, Appellant,**

v.

**SAFEWAY STORES, Inc., Appellee.**

**No. 15388.**

United States Court of Appeals
Eighth Circuit.

July 12, 1956.

Ray D. Jones, Jr., Kansas City, Mo., for appellant.

J. D. James, Kansas City, Mo. (Hogsett, Houts & James, Kansas City, Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN, and VAN OOSTERHOUT, Circuit Judges.

JOHNSEN, Circuit Judge.

The trial court, in a negligence suit of diversity jurisdiction, directed a verdict for the defendant at the close of the plaintiff's evidence, and the plaintiff has appealed.

Plaintiff claimed to have been hit and injured by a falling ladder in a back room of defendant's grocery store in Mission, Kansas. The question presented to us is whether the evidence as it stood, without any dissipation of its possible implications by proof on the part of defendant, would entitle the jury to determine whether plaintiff was at the time and the place of the accident an invitee or a licensee of defendant, or whether it required the court to hold as a matter of law that plaintiff's status could not be in the situation anything more than a licensee. Defendant does not here challenge the sufficiency of the evidence to go to the jury on the question of negligence. if there was room in the situation for plaintiff to be regarded as an invitee.

As against the motion for directed verdict, the facts which follow must be treated as being either directly or inferably established by plaintiff's evidence.

Plaintiff had made several previous visits to defendant's store as a customer.

On the occasion of the accident, he went to the store to purchase groceries and to get some empty cartons. It was the custom or practice of the store to furnish such cartons to its customers upon request. This was done, according to the admission of defendant's manager in his deposition, in order to create good will for the store and "to encourage business." Defendant thus properly could be said to be engaged in furnishing cartons to customers for its own business purposes.

The methods used in supplying customers with cartons were—quoting from the deposition of the store manager—"either sending them back to the back or having someone get the box for them." "Lots of times we just sent them back."

Plaintiff knew that the store regularly was supplying cartons to its customers. He had on two previous occasions requested cartons, at both of which times the manager or a clerk had brought the cartons out to him in the general part of the store. It was the fact that defendant supplied cartons which had induced him to come to defendant's store on the occasion of the accident—as defendant reasonably could be regarded as having expected it to do —instead of going to another grocery located considerably closer to his home.

Upon entering the store, he had taken one of the grocery carts standing near the door and wheeled it down an aisle which ran in front of the manager's office. The manager was standing outside the office at the time, and plaintiff asked him "if he had any empty cartons that I could have." The manager replied that "there was a big pile of them in the back room", but that "we are short of help here tonight and you will have to help yourself". Upon inquiry by plaintiff as to where the cartons were, the manager pointed to a door, the top of which was visible above the shelving, and said, "You go through there and turn to your right and you will find a large pile of boxes there".

Plaintiff proceeded into the back room, pursuant to the manager's directions, and without deviation from them, until he arrived at the pile of cartons. He was standing still in front of the pile, surveying it, when a 15-foot ladder suddenly toppled down from somewhere in the room, striking him on the back of his head and knocking him to the floor. He did not succeed in getting either groceries or cartons out of his visit, since he was taken from the store to a hospital.

On these probative elements and their undissipated possible implications, we think that a jury would have the right to find that the store was engaged in giving away cartons as a general customer service and not simply as a personal favor in individual situations; that this was intendedly done by defendant for a direct business purpose —that of encouraging or inducing customer presence and of fostering good will for continued patronage; that in the relation of the practice to its business purpose, defendant had included the service of having the employees get the cartons for customers, whenever it was possible for them to do so without prejudice to other store demands; that, if the business of the store was such at a particular time that the clerks were not able to take the time to bring a carton to the customer, he was directed to go to the back room and to help himself; that in thus sending a customer to the back room to get a carton, when this became necessary, defendant was no less intending to serve its own business purpose and was not purporting to establish any different status or relationship on the part of such a customer than that which would exist as to one to whom it was possible for it to extend the service and convenience of allowing him to wait in the general part of the store and having his carton brought to him; that the difference in the two situations was merely one of varying method in providing the same customer accommodation and effecting the same business purpose; that in both cases the thing done was in-

tended to have the same object and result to the store; that in thus making use of the device of supplying cartons in order to get customers into the store, obtain their good will, and increase its business, and having the fact of the service and of its method of providing it become matters of knowledge in the community, defendant reasonably could expect that customers coming to the store to obtain a carton and to purchase groceries would regard themselves as being general invitees in relation to their entry; that defendant could hardly claim that this initial status of general invitee had been or was in any way intended to be changed where it engaged in furnishing the service to such a customer of having his carton brought to him in the general part of the store; and that no more could a customer, who, merely because of the business conditions in the store at the time of his visit, was sent to the back room to help himself, reasonably be expected by defendant to assume that defendant was intending that he should have a different position or relationship than the other customer in the furnishing of cartons to him, where defendant did not make any indication to him, or there did not exist other reason for causing him to believe, that, in sending him to the back room, defendant was viewing its own interest and purpose as having ceased, and that it thus simply was extending to him an offer of permission to enter the room on his own responsibility.

We do not, of course, say that the evidence required the inferences which have been set out and a finding on the basis thereof that plaintiff was an invitee in respect to the accident, but only that we believe that, as the evidence broadly stood, it contained room for a fair legal doubt as to whether plaintiff in fact had merely the status of a licensee in the portion of the store where the accident occurred, and that the court therefore ought not, at that stage of the proceeding at least, to have granted defendant's motion for a directed verdict on this ground.

■ It is the general rule that, if the evidence in a particular situation, either on its direct elements or in its reasonable implications, contains room for fair legal doubt as to whether the status of an injured plaintiff is that of a licensee or an invitee, the question is one of fact for the jury. See 65 C.J.S., Negligence, § 272. And such a legal doubt, as a question of factual status, must be recognized as being one which is entitled to more liberal scope in respect to business premises than in the case of purely private property. In the practices engaged in by the commercial world to entice business visitors onto its premises, the question, after an injury occurs, of whether such a visitor had at the immediate time and the particular place the status of a licensee or an invitee will quite frequently involve equivocal shadows between storeowner claim of mere toleration and customer contention of reasonable right-to-believe.

"A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them." Restatement, Torts, § 332. "In determining whether a particular person is a business visitor of a possessor of land, the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor. * * * Thus, the fact that a building is used as a shop gives the public reason to believe that the shopkeeper desires them to enter or is willing to permit their entrance not only for the purpose of buying but also for the purpose of looking at the goods displayed therein or even for the purpose of passing through the shop. This is so because shopkeepers as a class regard the presence of the public for any of these purposes as tending to increase their business." Id. § 332(a).

■ However, "a possessor of land is subject to liability to another as a business visitor only for such bodily

harm as he sustains while upon a part of the land upon which the possessor gives the other reason to believe that his presence is permitted or desired because of its connection with the business or affairs of the possessor and which is held open to the other as a business visitor." Restatement, Torts, § 343(b). But a possessor may, of course, hold open, or reasonably appear to be holding open, a part of his premises to another as a business visitor in a particular situation, although it is not so held open by him to business visitors in general. "Since the status of the other as a business visitor depends upon whether the possessor should have known that his visitor would be led to believe that a part of the premises are held open to him as a visitor, the question is often one of fact and as such a matter for the jury * * *." Id. § 343(b).

We have no reason to believe that Kansas (where the accident involved occurred) does not accept these principles. There is no Kansas case which is immediately controlling, but the Supreme Court of Kansas has said: "The duty of the proprietor of a place of business which is open to public patronage, to use ordinary care to make the premises reasonably safe for customers is *generally limited to that part of the premises designed, adapted, and prepared for the accommodation of customers, or to which customers may reasonably be expected to go*. [Emphasis the Court's.] * * * The duty of the proprietor of a place of business to his customers does not require him to render safe for their use parts of the building reserved for use only by him and his employees, such as private offices, shipping rooms and warerooms, *unless he expressly or impliedly invites or induces a customer to enter such a reserved part*." (Emphasis ours.) Thompson v. Beard & Gabelman, 169 Kan. 75, 77, 216 P.2d 798, 799, 800. See also Campbell v. Weathers, 153 Kan. 316, 111 P.2d 72.

■ Thus, Kansas recognizes that a business visitor may be more than a licensee in his entry to any part of the premises "to which customers reasonably may be expected to go" or in his entry to any reserved part of the premises which he has either expressly or impliedly been invited or induced to enter. Here, as we have indicated, in the light of defendant's purpose and methods of supplying cartons to customers, and of the nature of the statement of defendant's manager to plaintiff at the time, we think that the court could not properly, on the evidence as it stood, declare as a matter of law that defendant did not intend to extend to plaintiff an invitation to enter the back room, but only to make an offer to him of permission to enter the room at his own risk, or that defendant had given plaintiff no reason to believe, and plaintiff had no right to believe, that he would be entering the room as part of and under the protection of his business-visitor status.

Reversed and remanded.