EUGENIE PRESHO, APPELLANT, V. J. M. McDONALD CO., A
CORPORATION, APPELLEE.

151 N. W. 2d 451

Filed June 9, 1967. No. 36554.

Quigley & Quigley, William S. Dill, and Deutsch &
Hagen, for appellant.

Robert V. Hoagland, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH,
SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an action for injuries sustained by plaintiff in defendant's building. The trial court directed a verdict for the defendant at the close of plaintiff's evidence, and plaintiff has perfected an appeal to this court.

A motion for directed verdict or its equivalent must for the purposes of decision thereon be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. Morse v. Gray, 166 Neb. 557, 89 N. W. 2d 842. We interpret the evidence delineated herein in the light of this rule.

The accident happened about 6:30 p.m., on Saturday, January 13, 1962, in a rear room of defendant's general merchandise store in Valentine, Nebraska. The store is located on the northeast corner of an intersection facing west on the principal street. The room where the accident occurred, which will hereinafter be referred to as the back room, is in the southeast portion of the rear of the store, and no merchandise is displayed or sold therein. The room is actually a storage and cloak room for employees. It does contain a ladies' restroom in one corner, and an office setup in another. The ladies' restroom is used by customers, but the evidence does not indicate it is maintained specifically for them. However, the plaintiff had never used it and did not know it was there until after the accident.

Plaintiff, who had been in the insurance business in Valentine for many years, had been in defendant's store on one or two other occasions on the day in question. She testified that she went into the store at approximately 6:30 p.m. to make a purchase and to get an empty box in which to ship an article she had purchased elsewhere. The employees were busy, and she asked the manager, who was also busy, if she could "have a box

to fit this frame." The frame in question was a wrapped 10 by 10-inch picture she had purchased elsewhere. Plaintiff testified the manager said, " 'Yes, help yourself.' " Plaintiff had obtained boxes there on at least two or three other occasions, and knew they were kept in the back room. Plaintiff went to the back room through the door connecting that area with the store proper. This door was usually open.

Plaintiff entered through the open door, and the next thing she remembers she was trying to pick herself up after hooking her toe on some object which she later determined to be the floor. Exhibit No. 1 is a photograph of the view from the open door into the back room. It shows a coat rack and some ladders against the south wall, and snow shovels directly against the east wall. It also shows a raised area in the floor, about a step inside the door where the cement floor between the door and the balance of the floor had settled. The raised area, looking through the doorway, starts on the north at less than one-eighth of an inch, and increases until it is at least one inch at the south. Anyone entering the door, looking at the floor, could see the raised area. Plaintiff's testimony on cross-examination is as follows: "Q Now, as you went—on this particular afternoon, you were in a hurry, were you, to get a box? A Not any more than usual. Q And as you went out through this door, did you look down as you went through the door? A A person always does. When you're walking you don't hardly look going—without looking where you're going. Q Well, you looked down then, is that correct? A Absolutely. * * * Q And you observed the condition of the floor at that time? A Beg your pardon? Q You observed the condition of the floor at that time? A I couldn't see anything the matter with it, if that's what you meant."

The parties are in disagreement as to whether plaintiff was an invitee or a licensee. The law imposes a

duty of greater care for the protection of an invitee on premises than it does for a licensee.

A person who enters a retail store for the purpose of shopping or of making a purchase is an invitee within the legal meaning of that term. Taylor v. J. M. McDonald Co., 156 Neb. 437, 56 N. W. 2d 610.

In general, it may be said that a licensee is one who is privileged to enter or remain upon property by virtue of the possessor's consent, whether express or implied. Lindelow v. Peter Kiewit Sons', Inc., 174 Neb. 1, 115 N. W. 2d 776.

The owner or occupant of property owes to an invitee the duty to observe and exercise for his protection the degree of care, caution, and vigilance which the circumstances justly and reasonably demand in order to protect him against injury or damage. Schild v. Schild, 176 Neb. 282, 125 N. W. 2d 900.

"The owner or occupant of property owes to a licensee the duty only to refrain from injuring him by willful or wanton negligence or a designed injury, or by failure to warn of a hidden danger or peril known to the owner or occupant but unknown to or unobservable by the licensee in the exercise of ordinary care." Schild v. Schild, 176 Neb. 282, 125 N. W. 2d 900.

In the store proper, merchandise was displayed to attract plaintiff's attention, and she could not be expected to constantly observe the floor as she moved along the aisles. There can be no question that while plaintiff was in the portion of the store where merchandise was displayed and sold, she was an invitee.

"As a general rule a customer trading in a self-service retail store has the right to rely upon the safety of passage along passageways used by customers and by doing so is not necessarily guilty of contributory negligence as a matter of law." Brown v. Slack, 159 Neb. 142, 65 N. W. 2d 382.

When plaintiff went into the back room she was not an invitee. She was on an errand personal to herself,

not in any way connected with the business of the defendant. She was after an empty packing box to mail or ship an article she had purchased elsewhere and for which no charge would be made. No merchandise was sold or displayed in the back room to distract her attention. In fact, the nature of the objects visible from the doorway indicated caution. While the testimony indicates that a ladies' restroom was located in this area, this fact was unknown to her and its use was not the purpose of her trip, so on the facts in this case it is immaterial.

The plaintiff's sole allegation of negligence is that the floor in the back room is irregular, and the irregularity is not readily discernible. Exhibit No. 1 would indicate that the irregularity is apparent to one observing the floor through the door entrance. As we said in Gorman v. World Publishing Co., 178 Neb. 838, 135 N. W. 2d 868, negligence and a duty to use due care does not exist in the abstract, but must be considered against a particular set of facts and circumstances.

While plaintiff in her brief cites many authorities, she discusses only three of them in her argument. In Haley v. Deer, 135 Neb. 459, 282 N. W. 389, the plaintiff went into a beer tavern to use a pay telephone from which the defendant derived revenue. While there she used a restroom maintained for the convenience of the tavern customers. Plaintiff, as directed by a large sign marked "Ladies' Toilet," went down a narrow hallway and returning missed a turn and fell through a trapdoor. That case is not in any way analogous to the instant one.

In Brown v. Slack, 159 Neb. 142, 65 N. W. 2d 382, the plaintiff, while shopping in a retail store, caught her foot in a milk rack which had been left lying on the floor in the aisle in the store proper. That case is readily distinguishable on the facts.

Sears, Roebuck & Co. v. Daniels, 299 F. 2d 154, involved a turned-up corner of a rubber mat between the street doors and the inner doors on which the plaintiff

tripped. An entrance or exit to a store which must be used by customers would usually require a different rule than a storage room.

For the reasons given, the trial court properly directed a verdict for the defendant, and the judgment entered thereon is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

I respectfully dissent on the ground that the evidence either on its direct elements or in its reasonable implications contains room for fair legal doubt as to whether the status of the plaintiff was that of a licensee or an invitee, and that the question was, therefore, one of fact for the jury.

The majority opinion relies upon the elements of the "economic benefit" test to determine whether plaintiff was an invitee or a licensee. Retatement, Torts 2d, in §§ 330 and 332, pp. 172 and 176, has changed is former position on that issue. Section 332 now reads: "(1) An invitee is either a public invitee or a business visitor. (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public. (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." To the same effect, see, also, Prosser on Torts (2d Ed.), § 78, p. 452.

There was evidence here that: "* * * we have a thousand people go back there to our restrooms a month." There was also evidence that the plaintiff had been in the back room to get boxes before; that she had used the back door entrance before; that the public used it on occasion; and there was also evidence that the passageway to the rest room was the area where the plaintiff fell.

A case directly in point, although not cited in the briefs, is Bullock v. Safeway Stores, Inc., 236 F. 2d 29

(8th Circuit 1956). That case also involved a store customer directed to a back storeroom to obtain a carton for which there was no charge. That case held that: "* * * the court could not properly on the evidence as it stood, declare as a matter of law that defendant did not intend to extend to plaintiff an invitation to enter the back room, but only to make an offer to him of permission to enter the room at his own risk, or that defendant had given plaintiff no reason to believe, and plaintiff had no right to believe, that he would be entering the room as part of and under the protection of his business-visitor status."

A portion of the comment on section 332, Restatement, Torts 2d, p. 183, states: "Since the status of the visitor as an invitee may depend upon whether the possessor should have known that the visitor would be led to believe that a particular part of the premises is held open to him, the question is often one of fact for the jury, subject to the normal control which the court exercises over the jury's function in such matters." See, also, Annotation, "Economic benefit" or "public invitation" as test of licensee-invitee status. 95 A. L. R. 2d 992.

SMITH, J., concurs in dissent.