MILDRED HACKNEY, APPELLANT, V. ELWOOD KLINTWORTH, APPELLEE.

153 N. W. 2d 852

Filed November 3, 1967. No. 36601.

Sidner, Gunderson, Svoboda & Schilke, for appellant.

Ray C. Simmons, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an action for personal injuries brought by Mildred Hackney against Elwood Klintworth, her son-in-law. The trial court sustained defendant's motion for a summary judgment and plaintiff has perfected an appeal to this court.

In support of his motion, defendant offered the depositions of the parties as well as the deposition of his wife, the plaintiff's daughter. They were the only eyewitnesses.

The facts are not in dispute. Plaintiff was visiting defendant's home for Sunday dinner. She arrived about 12:20 p. m., and asked to take a picture of her daughter and son-in-law while the sun was still on the east side of the house. The defendant and his wife stood on their front porch while the plaintiff snapped the picture. The porch is approximately on a level with the lawn and 30 feet from the north-south sidewalk, along the east lot line, to which it is connected by a cement walk. When the picture was taken plaintiff was 20 feet away, at an angle. After she snapped the picture, she turned to take one from a further distance. She walked to the northeast corner of the lot another 8 to 10 feet away when her left foot entered a hole or depression and she fell. She extended her right arm forward, hit the sidewalk, and broke her arm. She did not see the hole at any time. The hole was actually on the north lot line 2 feet west of the sidewalk, was round, 6 inches deep, and approximately 6 to 8 inches across. It had been dug several months before by the Fremont city engineer when he located the north lot line of the property. There was a similar hole near the west end of the lot line. Shortly after the hole was dug the defendant removed a lath which had been placed in it by the city engineer, replaced it with an iron stake which was 4 to 5 inches below the level of the lawn, and kicked in some loose dirt from around the hole. He did not have any spare dirt around his yard, did not consider the hole to be dangerous, did nothing further, and had forgotten about it. The area was covered by grass. The lawn had been cut 3 days before the accident.

A preliminary question is the status of the plaintiff, who was a social guest. Is a social guest an invitee or a licensee? The law is well settled a social guest is a

mere licensee. In Roan v. Bruckner, 180 Neb. 399, 143 N. W. 2d 108, we said: " 'Many courts speak of those who receive invitations * * * as social guests. They are however but licensees.' "

The general rule is well stated in Restatement 2d, Torts, § 330, Comment h3, p. 175, as follows: "Some confusion has resulted from the fact that, although a social guest normally is invited, and even urged to come, he is not an 'invitee,' within the legal meaning of that term, as stated in § 332. He does not come as a member of the public upon premises held open to the public for that purpose, and he does not enter for a purpose directly or indirectly connected with business dealings with the possessor. The use of the premises is extended to him merely as a personal favor to him. The explanation usually given by the courts for the classification of social guests as licensees is that there is a common understanding that the guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared for his reception, or that precautions will be taken for his safety, in any manner in which the possessor does not prepare to take precautions for his own safety, or that of the members of his family."

In Presho v. J. M. McDonald Co., 181 Neb. 840, 151 N. W. 2d 451, we held: "The owner or occupant of property owes to a licensee the duty only to refrain from injuring him by willful or wanton negligence or a designed injury, or by failure to warn of a hidden danger or peril known to the owner or occupant but unknown to or unobservable by the licensee in the exercise of ordinary care." No one could contend that the defendant herein could be charged with willful or wanton negligence. The question therefore arises as to whether on the facts herein he should be held liable because of the failure to warn the plaintiff of the presence of the hole.

The defendant did not consider the hole dangerous, and had forgotten about it. The question, however, is:

Was the survey hole so located that the defendant could have reasonably anticipated that it would be dangerous to the plaintiff or to any other social guest? It was not in any walk or path. It was not so located that it would be crossed as a means of ingress or egress. It was not out in an area of the yard which the defendant might expect social guests to use. It was located on the north lot line, in the northeast corner of the lot, 2 feet west of a paved sidewalk fronting the premises on the east. Was this a hidden peril of which the plaintiff should have been warned? On the facts herein we agree with the trial court that it was not.

The owner of property is not an insurer of the safety of his guests. He is not required to maintain his premises in such condition that an accident cannot possibly happen. Plaintiff, for her own convenience or purpose, and without any instruction or direction from the defendant, walked diagonally across defendant's lawn to the lot line and stepped into the hole. Does defendant have to warn guests of every defect on his property of which he at one time had knowledge, or only of those he knows to be dangerous which he would reasonably expect the guest to encounter? If we adopt the former, we will in effect eliminate the distinction between the duty to a licensee and an invitee.

This exact situation has not previously been covered in our cases, some of which might suggest we apply a rule of gross negligence in licensee cases except where there is a failure to warn of a hidden peril, and there only slight negligence may be involved. It is a maxim not to be disregarded that general expressions in opinions are to be taken in connection with the case in which such expressions were used as they relate to the facts in that particular case. When we speak of a hidden danger or peril known to the possessor of land, we refer to one that the possessor knows to be dangerous and which he might reasonably expect a guest to encounter. That is not the present situation. Even if we assume that defend-

ant should have known the hole to be dangerous, we do not feel it was one he should reasonably expect a guest to encounter.

There is some divergence in the cases over the country on this exact situation, but we are not ready to hold a host liable merely because he may know of a defect in his property. Many of the cases denying liability follow Comeau v. Comeau, 285 Mass. 578, 189 N. E. 588, 92 A. L. R. 1002, which involved a social guest injured as the result of the broken condition of the concrete in a passageway leading to his host's home. There the guest was denied recovery on the theory the host was chargeable at most with passive rather than active negligence in failing to correct the condition causing the injury.

A case much stronger than the present one is Scheibel v. Lipton, 156 Ohio St. 308, 102 N. E. 2d 453, which involved a depression 2 to 3 feet wide and 8 inches deep, located in defendant's lawn about 2 feet south of a private paved walk, which extended from the front entrance to defendant's driveway. There was no walk directly from the front entrance to the street. The depression had been caused by the removal of a bush several months previous to the accident. Plaintiff, who had never been to defendant's home before, drove there to pick up his wife shortly before midnight. He parked his car at the curb and rather than using the driveway and the walk, went directly across the lawn to the front entrance. On his attempt to return by the same route, he stepped into the hole and sustained personal injuries. The Ohio court, in holding that a verdict should have been directed for the defendant, said: "Was there a condition in this lawn, known to the hosts, which involved an unreasonable risk? There was a 'saucer shaped' depression but it was not located in the walk which was provided and which, we believe, the hosts could reasonably assume would be used. The depression was out in the lawn and we do not believe that there was any invitation by the hosts to leave the paved walk and go across

the lawn. That is what the plaintiff did. He reached the front door, then descended the steps to the paved walk, left the walk and proceeded across the lawn. Such conduct cannot be said to have been within the reasonable expectations of the hosts. It can hardly be said that the 'saucer shaped' depression was a trap or a condition involving unreasonable risk. It had been in the lawn for several months. The hosts and their children had lived with it. There was no evidence that anyone had ever been injured by it. It was not, in our judgment, such a condition as to require a warning by the hosts or the burning of flood lights to disclose it."

In Walker v. Williams, 215 Tenn. 195, 384 S. W. 2d 447, the property owner repaired a screen door in such a manner that it offered less resistance to being pushed open than before. This was known to the owner but not to the guest, who was the mother-in-law of the owner and a frequent visitor in the home. She pushed on the door with the usual force and fell down the steps. The Tennessee court held the repair did not constitute a trap, and sustained a directed verdict for defendants.

On the record herein, we cannot say that the defendant violated any duty owed to plaintiff as a licensee sufficient to create a jury question, and the motion for summary judgment was properly sustained. The judgment is affirmed.

AFFIRMED.

CARTER, J., participating on briefs.