Hubert Y. LINN, Appellee,

v.

Roy M. GARCIA and Milo Mally,
Appellants.

No. 75–1305.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1975.

Decided Feb. 6, 1976.

James E. Fellows, Deputy City Atty., Omaha, Neb., for appellant.

Philip M. Kneifl, Kneifl, Kneifl & Forrest, Omaha, Neb., for appellee.

Before HEANEY, WEBSTER and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This civil rights case is now before us on the appeal of defendants Roy M. Garcia and Milo Mally from a money judgment in favor of the plaintiff Hubert Y. Linn entered by the United States District Court for the District of Nebraska.

The case arises from the fact that during the early morning hours of June 27, 1973 the plaintiff was arrested by the defendants who at the time were members of the Police Department of the City of Omaha, Nebraska, and was charged with public drunkenness, disorderly conduct, resisting arrest, and abusing police officers, all of which are misdemeanors.

Plaintiff's arrest was characterized by substantial physical force employed upon him by one or both of the arresting officers, and the plaintiff sustained personal injuries which while doubtless painful were not permanent. After his arrest was perfected, plaintiff was taken from the scene of the arrest to the South Side Police Station in Omaha whence he was conveyed to the Douglas County Hospital. At the hospital he was X-rayed, given some medication and released to the Police Department. He was

returned to police custody and shortly thereafter was released when his father furnished bail in the amount of $135.00.

Following plaintiff's arrest Officer Mally prepared routine police reports which both he and Officer Garcia signed. One of those reports entitled "Resisting Arrest Report" gave the officers' version of what had taken place in connection with the arrest of the plaintiff and indicated that he had been guilty of resisting arrest, public drunkenness, disorderly conduct, and abusing a police officer.

In due course four formal charges were filed against plaintiff in the Municipal Court of Omaha by an Assistant City Prosecutor. Prior to trial the Prosecutor dismissed the charge of abusing a police officer, but the remaining charges were called for trial. Plaintiff appeared in person and by counsel. On advice of counsel the plaintiff did not testify and called no witnesses. The charges were submitted to the Municipal Judge, sitting without a jury, on the testimony of the arresting officers. Plaintiff was found guilty of public drunkenness, resisting arrest, and disorderly conduct. A fine was imposed with respect to each of the charges.

Plaintiff appealed successfully. He secured a reversal of his convictions and a remand of the cases to the Municipal Court for a jury trial. The cases were tried to a jury, and the jury acquitted plaintiff on all charges. The instant case was then commenced in the district court.

Plaintiff's complaint, as amended, set out five causes of action. In the first and third causes of action plaintiff claimed that he had been subjected to police brutality and to false arrest and imprisonment by the defendants acting under color of state law and in violation of rights protected by the Constitution of the United States. As to those causes of action federal jurisdiction was predicated upon 28 U.S.C. § 1343 read in connection with 42 U.S.C. § 1983. The second, fourth and fifth causes of action were based upon Nebraska common law, and with respect to those causes of action

the pendent jurisdiction of the federal court was invoked.

The second cause of action charged the defendants with common law assault and battery; the fourth cause of action charged the defendants with false arrest and imprisonment; and the fifth cause of action charged malicious prosecution of the plaintiff in the Municipal Court.

The defendants denied liability with respect to all of the causes of action, and the case was tried to a jury in the district court.

The record indicates that with respect to the first four causes of action the district court and counsel were of the opinion that it made no significant difference whether the substantive rights of the parties were governed by federal law in the field of civil rights or whether they were governed by the law of Nebraska relating to assault and battery and false arrest and imprisonment. It was clear that as to the fifth cause of action the governing law was that of Nebraska, no federal claim being involved.

In view of the close relationship between the first and second causes of action and to avoid the possibility of a double recovery those two causes of action were "merged," and the same course was taken with respect to the third and fourth causes of action.

The case was submitted to the jury on oral testimony and documentary exhibits including photographs of plaintiff taken very shortly after he was released from custody on June 27, 1973, and a stipulation as to the proceedings that had taken place in the state courts. At the conclusion of plaintiff's case and again at the close of all of the evidence defendants moved for directed verdicts; those motions were denied, and the case was argued and submitted to the jury.

On the first and second causes of action, which involved the claim of police brutality, the jury found against the defendant Garcia only and assessed actual damages in the sum of $1250.00 and punitive damages in the sum of $2500.00. On the third and fourth causes of action the jury found against both defendants and assessed

$800.00 as actual damages and $2,000.00 as punitive damages. On the fifth cause of action the jury found against both defendants and assessed actual damages in the sum of $5,000.00.

The district court entered judgment on the verdicts, and thereafter assessed an attorney's fee of $2,000.00 in favor of the plaintiff. Of that amount $1500.00 was assessed against Garcia and $500.00 was assessed against Mally.

Both defendants have appealed from the judgment against them. Although the jury did not find against Mally on plaintiff's first and second causes of action, plaintiff has not cross appealed with respect to those causes.

■ For reversal the defendants contend primarily that the plaintiff did not make a submissible case with respect to any of his causes of action, and that the defense motions for directed verdicts should have been granted. Defendants also contend that the district court erred in giving certain instructions, in refusing to give certain instructions requested by the defendants and in awarding an attorney's fee on the first and third causes of action which were the "federal claims." [1]

■ In determining whether the district court erred in submitting plaintiff's case to the jury we are required to view the evidence in the light most favorable to the plaintiff and to give him the benefit of all inferences favorable to him that are reasonably deducible from the evidence. However, plaintiff is not entitled to the benefit of unreasonable inferences or inferences in conflict with undisputed facts; and if we are satisfied that as a matter of law the plaintiff failed to make a submissible case on any cause or causes of action, then it is our duty to reverse with respect to that cause or causes. *Griggs v. Firestone Tire & Rubber Co.*, 513 F.2d 851 (8th Cir. 1975); *Schneider v. Chrysler Motors Corp.*, 401 F.2d 549 (8th Cir. 1968); *Hanson v. Ford Motor Co.*, 278 F.2d 586 (8th Cir. 1960); *Maxwell v. Lewis*, 186 Neb. 722, 186 N.W.2d 119 (1971); *Southern v. Willis Shaw Frozen Express, Inc.*, 185 Neb. 117, 174 N.W.2d 90 (1970); *Presho v. J. M. McDonald Co.*, 181 Neb. 840, 151 N.W.2d 451 (1967).

At the time of the incident in question plaintiff was about thirty years of age; he was employed as a long distance truck driver, and he operated his employer's equipment being compensated on a mileage basis. Around noon on June 26, 1973, plaintiff returned to Omaha from Cheyenne, Wyoming. After parking his vehicle at his employer's place of business he went to his parents' home in Omaha where he bathed and changed clothes. He then left the house in a 1970 model orange Ford Mustang automobile. While that vehicle unquestionably belonged to the plaintiff, the license plate on it had not been issued for that particular vehicle but rather for a 1953 model Chevrolet that was green in color.

According to his testimony, plaintiff spent the early and middle portions of the afternoon on business errands. About five o'clock, however, he began making the rounds of a number of bars and lounges in Omaha and its vicinity, and he went to a birthday party. Plaintiff admits that while on his tour he consumed what may be considered substantial quantities of beer, but he denies that he drank anything but beer, and denies that he became intoxicated.

At one establishment that he visited plaintiff picked up a woman companion, and they were together dancing until about 3:00 a. m. when he took her home. After leaving his companion at her apartment, plaintiff repaired to a restaurant in search of a person whom he thought might be interested in buying his car. Plaintiff did not find that person, but he did eat a meal of chicken and perhaps some fried potatoes. Prior to that meal plaintiff had not eaten anything substantial since around noon.

1. On the authority of *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), if not apart from it, we agree with the defendants that the award of an attorney's fee was improper. We see no occasion to discuss that aspect of the case further.

Before entering the restaurant plaintiff parked his car on the street. When he emerged from the restaurant around 3:00 a. m. on June 27, he discovered that his car had been sideswiped by another vehicle and had been heavily damaged on the left hand side. However, plaintiff determined, or thought he determined, that the car was still operable, and he undertook to drive it home.

Before plaintiff had gone very far, the left front tire of his car blew out, and his engine died. Plaintiff made unsuccessful efforts to start the engine so that he could get the car off the street, and his efforts entailed his getting partially down under the dashboard of the car in an effort to find the vehicle's fuse panel. While plaintiff was under the dashboard, he became ill and vomited over himself.

After cleaning himself up as best he could with some paper napkins, plaintiff got back down under the dashboard or partially so, and was in that position when he became conscious of a person standing over him on the left hand side of the car. Plaintiff looked up and discovered a police officer who turned out to be the defendant Garcia.

Garcia testified, and there is no occasion to question his testimony on this point, that he had been cruising alone in his police cruiser when he received a "man down" call from the police dispatcher who directed him to a point near the intersection of 42nd and "H" Streets where he discovered the plaintiff in his disabled vehicle. Garcia at the time was armed with a pistol and a police night stick and he was also equipped with handcuffs and with a container of Mace. While Garcia was undertaking to deal with plaintiff, Officer Mally, equipped as was Garcia, appeared on the scene in response to a "man down" call which he had received from the dispatcher. At an early stage of the proceedings Garcia had called for a police patrol wagon and for a tow truck to haul plaintiff's car away. By the time at which those vehicles arrived, the difficulties between plaintiff and the officers had subsided, and he was taken to the police station

in the patrol wagon without further incident. Shortly before entering the patrol wagon, plaintiff offered to pay the driver of the tow truck to tow the vehicle to plaintiff's home, but Garcia stated that the vehicle had been "impounded." Presumably, it was taken to a contract storage facility.

The facts just stated are substantially undisputed, but there is a sharp and irreconcilable dispute between the parties as to what happened between Garcia's appearance on the scene and the final removal of plaintiff to the police station.

Plaintiff testified in substance that initially he and Garcia argued about plaintiff's condition and about the cause of the damage to the car. Plaintiff's legs, one of which had been the subject of surgery at an earlier date, began to cramp, and plaintiff asked permission to get out of the car to stretch his legs. Permission was refused. When Garcia left plaintiff's car momentarily, presumably to call the patrol wagon and the tow truck, plaintiff got out of the car anyway. Plaintiff testified that thereupon Garcia attacked him brutally with his night stick and beat him around his legs and shoulders.

The testimony of Garcia was to the effect that he had no difficulty with plaintiff until he told plaintiff that he was to be taken to the police station and held for four hours and that the patrol wagon and tow truck had been sent for. Garcia testified that upon being so advised plaintiff became angry and began to try to get out of the car and to strike Garcia. Garcia undertook to keep plaintiff in the car, and he concedes that he struck plaintiff ten or twelve times about the arms when plaintiff would strike at Garcia with his hands and fists.

Mally testified that when he arrived on the scene, Garcia was trying to keep plaintiff in the car. When Mally arrived, he told Garcia that he was to make a telephone call to the police station, and the making of the call took Garcia away from the scene for a short period of time. According to Mally, he was required to leave the plaintiff momentarily in order to park his own car, and

that while he was doing that plaintiff left his vehicle and started walking up the sidewalk. Mally says that he undertook to get plaintiff back into the car, that plaintiff fought him and kicked him, and that it was necessary to strike plaintiff with the night stick a number of times about the legs. Eventually, plaintiff was put back into the car and did not leave it again until the tow truck arrived.

The defense called as witnesses the driver of the tow truck, Frank E. Widman, and also Ms. Mary Anne Cahill, a waitress at a nearby all-night restaurant who was on friendly terms with both officers and who happened to come by the scene just before the tow truck arrived. By the time Ms. Cahill got there, the physical encounter involving the plaintiff had come to an end. She testified that the plaintiff was jumping around in his car, beating on the roof and shouting obscenities; she conceded, however, that on an earlier occasion she had stated that plaintiff was calling for help. Widman testified that plaintiff was removed from the car at Widman's request, and that plaintiff tried to "interfere" with Widman in his efforts to connect the tow truck to the car. However, the interference amounted to nothing but the plaintiff's getting between the truck and the car while asking Widman to tow the car to plaintiff's home.

When plaintiff reached the South Side Police Station, it was decided by an officer that plaintiff should go to a hospital, and he was taken to Douglas County Hospital by two officers other than the defendants. While plaintiff was at the hospital, X-rays of his left leg and ankle were taken, and no fractures were found. It was found that he had hematomas on his left arm and left thigh. Some medication was prescribed for him, and he was released to the custody of the police. Plaintiff's hospital bill amounted to a little more than $55.00, most of which was attributable to the X-rays.

After plaintiff left the hospital, he was taken first to the Central Police Station where he was photographed and fingerprinted, and was then returned to the South Side Station where he was met by his father and mother. As stated, plaintiff was released on bail. The amount of the bail was fixed automatically by reference to the four "charges" against the plaintiff.

I.

■ It was the province of the jury to weigh the evidence and resolve the conflicts therein.

As to the first and second causes of action, the jury evidently accepted the plaintiff's version of what had happened at the scene of the arrest, and this may explain why the jury did not find against Mally on those two causes of action. Perhaps strangely, in view of Mally's own testimony, the plaintiff emphatically denied that Mally ever struck him or employed any physical force with respect to him.

■ We think that the jury was justified in finding on the conflicting evidence that Garcia employed excessive physical force in his dealings with plaintiff, and in further finding that the quality of Garcia's conduct was such as to warrant an award of punitive as well as actual damages. Plaintiff obviously suffered physical pain as a result of his injuries and he may well have suffered some mental anguish and humiliation; he had a small amount of hospital and medical expense; he lost some time from his work and was not able to resume full work activity for about a month after his arrest.

The issues relative to the use of excessive force by the defendants were submitted to the jury under adequate and proper instructions. We are satisfied that the verdicts on the first and second causes of action were sustained by the evidence, and we affirm the judgment against Garcia on those causes of action.

II.

As to the third and fourth causes of action, the question boils down to whether the defendants had probable cause to arrest the plaintiff, as the term "probable cause" is conventionally understood by the federal

courts in civil rights context and by the courts of Nebraska. If probable cause existed, the arrest and detention of plaintiff were justified; if such cause did not exist, the arrest and subsequent detention were unlawful and violated rights of the plaintiff guaranteed by the Constitution of the United States and by the law of Nebraska.[2] *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Pritchard v. Perry,* 508 F.2d 423 (4th Cir. 1975); *Draeger v. Grand Central, Inc.,* 504 F.2d 142 (10th Cir. 1974); *Wilson v. Gutschenritter,* 185 Neb. 311, 175 N.W.2d 282 (1970); *Diers v. Mallon,* 46 Neb. 121, 64 N.W. 722 (1895).

■ "Probable cause" for a warrantless arrest exists where facts known to the officers or about which they have reliable information are sufficient in themselves to warrant a man of reasonable prudence and caution in believing that a crime has been or is being committed by the person to be arrested. *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State v. Dussault,* 193 Neb. 122, 225 N.W.2d 558 (1975); *State v. Brewer,* 190 Neb. 667, 212 N.W.2d 90 (1973); *State v. Perez,* 182 Neb. 680, 157 N.W.2d 162, *cert. denied,* 393 U.S. 886, 89 S.Ct. 200, 21 L.Ed.2d 163 (1968). It is not material that the person arrested may turn out to be innocent, and the arresting officer is not required to conduct a trial before determining to make the arrest. *Morrison v. United States,* 491 F.2d 344, 346 (8th Cir. 1974).

■ Each case involving a question of probable cause must be decided on its own facts, *State v. Goings,* 184 Neb. 81, 165 N.W.2d 366 (1969). Where the facts are in dispute or where they are subject to different inferences the question of probable cause is for the jury; however, where the facts are not disputed or are susceptible to only one reasonable inference, the question is one of law for the court. *Draeger v.*

*Grand Central, Inc., supra; Giordano v. Lee,* 434 F.2d 1227, 1230 (8th Cir.), *cert. denied,* 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971); *Banish v. Locks,* 414 F.2d 638 (7th Cir. 1969); *Wilson v. Gutschenritter, supra; Herbrick v. Samardick & Co.,* 169 Neb. 833, 101 N.W.2d 488 (1960); *Barton v. Wilson,* 168 Neb. 480, 96 N.W.2d 270 (1959).

■ We conclude that the evidence establishes as a matter of law that the officers were justified in arresting and detaining the plaintiff, and that the district court erred in submitting the third and fourth causes of action to the jury.

The conduct of the plaintiff prior to his encounter with Garcia has been described in a general way. He had consumed beer on at least seven occasions between about five o'clock in the afternoon and about three o'clock in the morning; he had had nothing substantial to eat from noon on June 26 until he ate the restaurant meal after 2:00 a. m. on June 27; he testified that he had commenced his return trip from Cheyenne to Omaha in the early hours of June 26. When Garcia arrived at 42nd and "H" Streets where plaintiff's vehicle had come to rest, Garcia observed that the car had been in an accident, that the driver was in what appeared to be a recumbent position, that there was a strong odor of alcohol on plaintiff's breath, and that he had vomited over himself.

It is possible, of course, that plaintiff was not drunk at the time, and the jury in the Municipal Court acquitted him of the charges of drunkenness as well as of the other charges. However, we do not think that reasonable men could differ on the proposition that when Garcia encountered plaintiff, the latter gave every appearance of being drunk. In such circumstances, Garcia and Mally were justified in arresting and detaining plaintiff on a charge of public drunkenness, if nothing else.

---

**2.** In Nebraska a police officer has a right to make an arrest without a warrant in certain situations including that in which he has probable cause to believe that the person to be arrested has committed or is committing a misdemeanor in the presence of the officer. Nebraska Revised Statutes, 1969 Cum.Supp. §§ 29–401 and 29–404.02.

We do not accept the theory of the plaintiff that he was arrested on not one, but four charges, and that he was falsely arrested and imprisoned unless the defendants had probable cause to believe that he had committed in their presence or was committing all four of the offenses for which he was allegedly arrested.

 The arrest and detention of plaintiff was a single incident. In our view, when a peace officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, and it is immaterial that the officer may have thought, without probable cause, that the defendant was committing or had committed other offenses as well.

The judgment in favor of the plaintiff on the third and fourth causes of action will be reversed, and those causes of action will be dismissed.

### III.

There remains for consideration the fifth cause of action based on the alleged malicious prosecution of plaintiff in the Municipal Court.

The law of Nebraska with respect to the tort action for malicious prosecution is well established. In order for a plaintiff to prevail in such an action, he must establish: the fact that he was prosecuted; that the defendant caused the prosecution; that the prosecution came to a bona fide termination favorable to the plaintiff; that there was no probable cause for the prosecution; that the prosecution was actuated by malice; and that as a result of the prosecution plaintiff sustained damage. Before the malicious prosecution plaintiff can recover, all of those elements must coalesce. If a prosecution is based on probable cause, the presence of malice on the part of the prosecutor is not material; conversely, even where probable cause does not exist, the absence of malice precludes recovery. *Cimino v. Rosen*, 193 Neb. 162, 225 N.W.2d 567 (1975); *Schmidt v. Richman Gordman, Inc.*, 191 Neb. 345, 215 N.W.2d 105 (1974); *Brumbaugh v. Frontier Refining Co.*, 173 Neb.

375, 113 N.W.2d 497 (1962); *Hackler v. Miller*, 79 Neb. 209, 114 N.W. 274 (1907). While questions of malice and probable cause are ordinarily for the jury, they may become questions of law for the court where the facts are undisputed or where only one inference can be drawn from the evidence. *Brumbaugh v. Frontier Refining Co., supra.*

Under Nebraska law the malice that a malicious prosecution plaintiff must show in order to be successful is not limited to such things as spite, hatred or ill will. It is sufficient if the plaintiff shows that the prosecution was wrongful, intentional and was actuated by improper or sinister motives. *Hackler v. Miller, supra; Miles v. Walker*, 66 Neb. 728, 92 N.W. 1014 (1902); *Tucker v. Cannon*, 32 Neb. 444, 49 N.W. 435 (1891). Malice is not to be presumed; the presence or absence of malice is to be determined by reference to the facts and circumstances of each particular case, and in proper circumstances a jury may draw, but is not required to draw, an inference of malice from lack of probable cause. *Schmidt v. Richman Gordman, Inc.* and *Hackler v. Miller*, both *supra.*

 Our conclusion in connection with the third and fourth causes of action that as a matter of law the defendants had probable cause to arrest and detain the plaintiff does not necessarily require a similar conclusion with respect to the subsequent prosecution of the plaintiff on four separate charges of law violation. And we think that when the evidence is viewed in the light most favorable to the plaintiff and in the light of the Nebraska cases heretofore cited, the plaintiff made a submissible case of malicious prosecution, and that the district court did not err in sending the fifth cause of action to the jury.

However, we are convinced that the district court committed prejudicial error in its instructions, and that there must be a new trial with respect to the malicious prosecution phase of the case.

The instructions of the district court that were particularly relevant to the fifth cause

of action were Instructions Nos. 8, 19, 20 21, 22 and 23.

Instruction No. 8 correctly set forth the elements of a cause of action for malicious prosecution. Instructions Nos. 20, 21, 22 and 23 dealt with other aspects of the fifth cause of action, and we have no trouble with them, although Instruction No. 20 might have been improved by telling the jury in express terms that it was not required to infer malice from the lack, if any, of probable cause, and we think that the district court might have done well to have mentioned some of the other things that the jury should take into consideration in passing on the question of malice *vel non.*

Instruction No. 19 dealt with probable cause both in relation to the causes of action for false arrest and imprisonment and in relation to the cause of action for malicious prosecution. The instruction contained two paragraphs, and it is the second paragraph, as applied to the fifth cause of action, that gives us trouble.

The first paragraph of the instruction simply defined "probable cause" in conventional and acceptable terms and was proper. In the second paragraph, however, the district court referred to the four charges that were filed against the plaintiff in the Municipal Court and told the jury that it was to consider the evidence as it applied to each charge separately. The instruction then proceeded: ". . . Thus, there may have been probable cause as to all, some or none of the four charges. If the plaintiff has proved by a preponderance of the evidence all of the essential elements of a cause of action as to any one of the four charges, that is sufficient for him to recover on that cause of action." Counsel for the defendants objected to the second paragraph of the instruction, including the quoted language.

As we read the second paragraph of the instruction in relation to the fifth cause of action, the district court in effect told the jury that there were four prosecutions of the plaintiff in the Municipal Court, and that (other elements of the cause of action, including malice, being present) the plaintiff was entitled to recover on the fifth cause of action if he established that any one of the four prosecutions was not based on probable cause, as defined in the first paragraph of the instruction.

We accept, at least for present purposes, the district court's characterization of the proceedings in the Municipal Court as being four separate prosecutions. And we can also accept the proposition that if A. is simultaneously prosecuted by B. on a plurality of charges arising out of the same overall transaction, A. is entitled to recover damages if any one of the plural charges was pressed maliciously and without probable cause. It does not follow, however, that A. would be entitled to recover damages with respect to other charges based on probable cause or not maliciously put forward.

And therein lies the vice of the second paragraph of Instruction No. 19. If the district court had gone on and told the jury in that instruction, or in some other instruction, that if it found for the plaintiff on the fifth cause of action with respect to less than all of the four Municipal Court prosecutions, it should limit its award of damages to those resulting from the particular prosecutions which it found to be malicious and without probable cause, we think that there would have been no error.

Unfortunately, the district court did not so limit the possible recovery on the fifth cause of action either in Instruction No. 19 or in any other instruction. And the jury might well have thought that if it found that any one of the four prosecutions was characterized by malice and lack of probable cause, it should compensate the plaintiff for all of the damages that he sustained as a result of being prosecuted on all four charges. We, of course, do not know what the jury found with respect to the fifth cause of action other than that it found for the plaintiff and awarded him $5,000.00. Thus, we cannot say that the jury did not entertain the misconception just suggested or that the district court's error was harmless.

To sum up, we affirm the judgment against the defendant, Garcia, on the first and second causes of action but vacate the post-judgment order allowing an attorney's fee. We reverse the judgment on the third and fourth causes of action and remand the case with directions to the district court to dismiss those causes of action. We reverse the judgment on the fifth cause of action and remand the case for a new trial on that cause of action.

Affirmed in part; reversed and remanded in part.