ROGER W. HEINS, APPELLANT, V. WEBSTER COUNTY, NEBRASKA, DOING BUSINESS AS WEBSTER COUNTY HOSPITAL, APPELLEE.

552 N.W.2d 51

Filed August 23, 1996. No. S-94-713.

Jefferson Downing, of Bruckner, O'Gara, Keating, Hendry, Davis & Nedved, P.C., for appellant.

Daniel L. Lindstrom and Jeffrey H. Jacobsen, of Jacobsen, Orr, Nelson, Wright, Harder & Lindstrom, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

The question presented is whether this court should abolish the common-law classifications of licensee and invitee and require a duty of reasonable care to all nontrespassers.

Roger W. Heins sued Webster County, Nebraska, doing business as Webster County Hospital, to recover for an injury to his back that he sustained when he fell upon the front entrance steps to the hospital. The district court for Webster County entered judgment in favor of the county, finding that because Heins was merely a licensee, the only duty that the county owed him was to refrain from willful or wanton negligence. Heins appeals, arguing that this court should reverse the decision of the district court and abolish the common-law classifications of licensee and invitee in favor of requiring a duty of reasonable care to all nontrespassers. We conclude that abolishing the distinction between invitee and licensee and requiring a duty of reasonable care to all lawful entrants is a more reasonable method of determining fault and is more responsive to the needs of present-day society. We therefore reverse the judgment of the district court.

## FACTUAL BACKGROUND

Webster County experienced a heavy snowfall on October 31, 1991. On November 5, snow accumulation in Red Cloud,

Nebraska, remained substantial. On that date, Heins traveled from his home in Sutton, Nebraska, to Red Cloud in order to visit his physician. While in Red Cloud, Heins, accompanied by his wife, Ruth, and daughter Jill, visited the Webster County Hospital. The evidence is disputed concerning the nature of this trip. Webster County claims that Heins was merely paying a social visit to his daughter Julie Heins, who was the director of nursing for the hospital. Heins claims that his visit was not only social, but also to coordinate plans for him to play Santa Claus for the hospital staff during the upcoming Christmas season. During their visit with Julie, Roger, Ruth, and Jill made plans to have lunch with Julie and a friend at a local restaurant.

While Roger, Ruth, and Jill were exiting the hospital through the main entrance, Roger fell. At trial, Roger testified that he held the front entrance door open for his wife and daughter and then started to step out onto the landing himself. At this point, Heins testified, he slipped and "went down into a pretzel, you might say, and I was hanging on to the door, and my behind hit the landing." Both Jill and Heins claim to have seen a patch of ice on the landing after Heins fell, and attribute the cause of his fall to the ice.

Heins brought this action under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 through 13-926 (Reissue 1991 & Cum. Supp. 1994), claiming that Webster County was negligent (1) in failing to properly inspect the above-described entrance prior to inviting the public to use the entrance, (2) in failing to warn Heins of the existence of a dangerous condition, (3) in allowing the ice and snow to accumulate, and (4) in failing to remove the ice and snow.

Following a bench trial, the district court found that Heins "went to the Webster County Hospital to visit his daughter who was an employee of the hospital." Furthermore, the court concluded that Heins was a licensee at the time of his fall and that the county did not act willfully or wantonly or fail to warn of known hidden dangers unobservable by Heins. Thus, the court entered judgment in favor of Webster County. Heins appeals.

## ASSIGNMENTS OF ERROR

Summarized, Heins assigns that the district court erred in not generally holding the hospital to a duty of reasonable care to Heins. In the alternative, he argues the hospital should be held to a duty of reasonable care for one of the following reasons: (1) he was a public invitee, (2) he was a social guest on the hospital premises, or (3) hospital personnel knew he was on the premises.

## STANDARD OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Nelson v. Metropolitan Utilities Dist.*, 249 Neb. 956, 547 N.W.2d 133 (1996); *Whitten v. Malcolm*, 249 Neb. 48, 541 N.W.2d 45 (1995); *Lee Sapp Leasing v. Catholic Archbishop of Omaha*, 248 Neb. 829, 540 N.W.2d 101 (1995).

## ANALYSIS

This appeal questions the continued validity of the common-law classifications of licensee, invitee, and trespasser for the purposes of determining the duty of a landowner in premises liability cases. We begin by noting that this appeal presents our first consideration of this issue. In *Buchanan v. Prickett & Son, Inc.*, 203 Neb. 684, 279 N.W.2d 855 (1979), a case involving the "fireman's rule," we declined to abrogate the policy of defining the extent of the duty of care by the use of the classifications. However, *Buchanan* did not raise the issue of whether we should retain the classifications, and we recognized that under the facts in *Buchanan* a reconsideration of the classifications was unnecessary.

### PRESENT NEBRASKA LAW

Under present law, in order to ascertain the duty owed by landowners to entrants upon their land, courts have classified entrants as either licensees, invitees, or trespassers. Landowners owe invitees the duty of reasonable care to keep the premises safe for the use of the invitee. *Neff v. Clark*, 219 Neb. 521, 363 N.W.2d 925 (1985). An invitee is a person who goes on the premises of another in answer to the express or implied invitation of the owner or occupant on the business of

the owner or occupant or for their mutual advantage. *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996). However, we have limited the duty that a landowner owes to a licensee. A licensee has been defined as a person who is privileged to enter or remain upon the premises of another by virtue of the possessor's express or implied consent, but who is not a business visitor. *Id*. An owner or occupant of premises owes only the duty to refrain from injuring a licensee by willful or wanton negligence or designed injury, or to warn him, as a licensee, of a hidden danger or peril known to the owner or occupant but unknown to or unobservable by the licensee, who is required to exercise ordinary care. *Blackbird v. SDB Investments*, 249 Neb. 13, 541 N.W.2d 25 (1995). A business visitor is considered an invitee, and thereby receives a higher degree of care, reasonable care, ostensibly because he or she conveys some benefit upon the landowner. See *Roan v. Bruckner*, 180 Neb. 399, 143 N.W.2d 108 (1966). If Heins was a licensee at the time of his injury, the hospital owed him the limited duty owed to a licensee. Therefore, under existing Nebraska law, the trial court correctly found for the hospital based on its finding that Heins was a licensee.

However, Heins calls into question the continued usefulness of the licensee and invitee classifications. In fact, a number of jurisdictions have decided that the common-law classifications have outlived their usefulness, and have either partially or completely abandoned the common-law classifications.

## OVERVIEW OF OTHER JURISDICTIONS

In 1957, England statutorily abolished the common-law distinction between licensees and invitees and imposed upon the occupier a "common duty of care" toward all persons who lawfully enter the premises. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 62 (5th ed. 1984). Shortly thereafter, in 1959, the U.S. Supreme Court decided that the classifications would not apply in admiralty law, stating that the classifications created a "semantic morass." See, *Kermarec v. Compagnie Generale*, 358 U.S. 625, 631, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); Keeton et al., *supra*. In 1968, the

Supreme Court of California decided the landmark case *Rowland v. Christian*, 69 Cal. 2d 108, 443 P.2d 561, 70 Cal. Rptr. 97 (1968), which abolished the traditional duty classification scheme for licensees, invitees, and trespassers and replaced it with ordinary negligence principles.

A number of jurisdictions have followed California in abandoning all classifications, including that of trespasser. The jurisdictions that have followed California are: Hawaii (*Pickard v. City & County*, 51 Haw. 134, 452 P.2d 445 (1969)); Colorado (*Mile High Fence v. Radovich*, 175 Colo. 537, 489 P.2d 308 (1971)); *Smith v. Arbaugh's Restaurant, Inc.*, 469 F.2d 97 (D.C. Cir. 1972), *cert. denied* 412 U.S. 939, 93 S. Ct. 2774, 37 L. Ed. 2d 399 (1973); Rhode Island (*Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 333 A.2d 127 (1975)) (but see *Tantimonico v. Allendale Mut. Ins. Co.*, 637 A.2d 1056 (R.I. 1994) (restoring status category of trespasser)); New York (*Basso v. Miller*, 40 N.Y.2d 233, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976)); New Hampshire (*Ouellette v. Blanchard*, 116 N.H. 552, 364 A.2d 631 (1976)); Louisiana (*Cates v. Beauregard Electric Cooperative, Inc.*, 328 So. 2d 367 (La. 1976), *cert. denied* 429 U.S. 833, 97 S. Ct. 97, 50 L. Ed. 2d 98); Alaska (*Webb v. City and Borough of Sitka*, 561 P.2d 731 (Alaska 1977)); Illinois (*Keller v. Mols*, 129 Ill. App. 3d 208, 472 N.E.2d 161 (1984) (only with regard to child entrants)); Montana (*Limberhand v. Big Ditch Co.*, 218 Mont. 132, 706 P.2d 491 (1985) (construing Montana statute to require duty of ordinary care to all)); and Nevada (*Moody v. Manny's Auto Repair*, 110 Nev. 320, 871 P.2d 935 (1994)).

A number of states have abolished the distinctions between licensees and invitees but retained limited duties to trespassers. Prosser and Keeton explain the rationale for retaining a separate rule for trespassers thus: "[I]n a civilization based on private ownership, it is considered a socially desirable policy to allow a person to use his own land in his own way, without the burden of watching for and protecting those who come there without permission or right." Keeton et al., *supra*, § 58 at 395. Furthermore, "invitees and licensees enter another's lands under color of right, [but] a trespasser has no basis for claiming extended protection. There remains the possibility

that the abandonment of the status of trespasser would place an unfair burden on a landowner who has no reason to expect a trespasser's presence." *Poulin v. Colby College*, 402 A.2d 846, 851 n.5 (Me. 1979).

The states that have abandoned the classifications with regard to licensees and invitees but retained them with regard to trespassers are: Minnesota (*Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972)); Massachusetts (*Mounsey v. Ellard*, 363 Mass. 693, 297 N.E.2d 43 (1973)) (see, also, *Schofield v. Merrill*, 386 Mass. 244, 435 N.E.2d 339 (1982) (trespasser exclusion reaffirmed by vote of 4 to 3)); Wisconsin (*Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 236 N.W.2d 1 (1975)); North Dakota (*O'Leary v. Coenen*, 251 N.W.2d 746 (N.D. 1977)); Maine (*Poulin v. Colby College, supra*); Oregon (*Ragnone v. Portland School Dist. No. 1J*, 291 Or. 617, 633 P.2d 1287 (1981)); Tennessee (*Hudson v. Gaitan*, 675 S.W.2d 699 (Tenn. 1984)); Wyoming (*Clarke v. Beckwith*, 858 P.2d 293 (Wyo. 1993)); Kansas (*Jones v. Hansen*, 254 Kan. 499, 867 P.2d 303 (1994)); and New Mexico (*Ford v. Bd. of County Com'rs*, 118 N.M. 134, 879 P.2d 766 (1994)).

Many states have altered the common-law categories without abrogating them altogether. Missouri and Kentucky apply a duty of reasonable care once the presence of a visitor is known. While this approach does not expressly abrogate the common-law classifications, once a landowner or occupier knows of the presence of a licensee or trespasser, the landowner owes him or her the same duty of care that he owes to an invitee. Therefore, this approach is similar to the California rule and may have developed from the "discovered trespasser rule," which provides that an occupier must exercise reasonable care for a trespasser's safety once his or her presence is known. See Keeton et al., *supra*, § 58.

Other states have passed legislation altering the common-law categories. Connecticut was the first state to do so by providing that the landowner owed the same duty of care to social guests as he owed to invitees. See, Joseph A. Page, The Law of Premises Liability (2d ed. 1988); Conn. Gen. Stat. Ann. § 52-557a (West 1991). Other states have given the social guest the status of an invitee. See, *Burrell v. Meads*,

569 N.E.2d 637 (Ind. 1991); *Ferguson v. Bretton*, 375 A.2d 225 (Me. 1977). Illinois eliminated the classifications by statute in 1984. See Ill. Ann. Stat. ch. 740, para. 130/2 (Smith-Hurd 1993).

However, the majority of states have retained the common-law distinctions. Thirty-six states and the District of Columbia have reconsidered the common-law classification scheme. Of the 37 jurisdictions reconsidering, 23 have abolished either some or all of the categories. Fourteen states have expressly retained the categories. Another 14 jurisdictions have simply continued to apply the common-law classifications without specifically addressing their continuing validity. We have been among the states continuing to follow the distinctions without specifically rejecting them.

### POLICY REASONS FOR AND AGAINST ABOLISHING CLASSIFICATIONS

A number of policy reasons have been asserted for either abandoning or retaining the common-law classifications. Among the jurisdictions retaining the categories, most find value in the predictability of the common law. Some courts rejecting change have reasoned that replacement of a stable and established system of loss allocation results in the establishment of a system devoid of standards for liability. See, *Jones v. Hansen, supra*; Annot., 22 A.L.R.4th 294 (1983). It also has been suggested that the harshness of the common-law rules has been ameliorated by the judicial grafting of exceptions and that creation of subclassifications ameliorated the distinctions between active and passive negligence. *Jones v. Hansen, supra*. These states have concluded that abandoning the established system of liability in favor of a standard of reasonable care would decrease predictability and ensure that each case would be decided on its facts. Therefore, these states claim that landowners would be less able to guard against risks. Before Kansas joined those states abolishing the invitee-licensee distinction, the Kansas Supreme Court argued that to adopt one standard of care would lower the standard of care that is now owed to invitees and produce inconsistent, unpredictable rules of law. See *Gerchberg v. Loney*, 223 Kan. 446,

576 P.2d 593 (1978). Furthermore, the *Gerchberg* court opined that to abolish the classifications would give unbridled discretion to the jury.

The most common reason asserted for abandoning the categories is that an entrant's status should not determine the duty that the landowner owes to him or her. As the California Supreme Court stated in *Rowland v. Christian*, 69 Cal. 2d 108, 118, 443 P.2d 561, 568, 70 Cal. Rptr. 94, 104 (1968):

> A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. The common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty.

In abolishing the invitee-licensee distinction, the Massachusetts Supreme Judicial Court recognized:

> It no longer makes any sense to predicate the landowner's duty solely on the status of the injured party as either a licensee or invitee. Perhaps, in a rural society with sparse land settlements and large estates, it would have been unduly burdensome to obligate the owner to inspect and maintain distant holdings for a class of entrants who were using the property "for their own convenience" . . . but the special immunity which the licensee rule affords landowners cannot be justified in an urban industrial society.

*Mounsey v. Ellard*, 363 Mass. 693, 706, 297 N.E.2d 43, 51 (1973).

Another justification for abandoning the classifications is to eliminate the complex and unpredictable state of the law necessitated by the harsh nature of the common-law rules. See

*O'Leary v. Coenen*, 251 N.W.2d 746 (N.D. 1977). As the U.S. Supreme Court proclaimed,

> courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict.

*Kermarec v. Compagnie Generale*, 358 U.S. 625, 630-31, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959). The Court recognized that the "distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism." 358 U.S. at 630. Referring to the judicial interpretation of the common-law distinctions as a "semantic morass," the Court declined to adopt them into admiralty law. 358 U.S. at 631.

Those states abandoning the distinctions argue that instead of the entrant's status, the foreseeability of the injury should be the controlling factor in determining the liability of the landowner. See, *Basso v. Miller*, 40 N.Y.2d 233, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976); *Mariorenzi v. Joseph Di Ponte, Inc.*, 114 R.I. 294, 333 A.2d 127 (1975). Many jurisdictions that have abandoned the common-law classifications as determinants of liability have found that they remain relevant in determining the foreseeability of the harm under ordinary negligence principles. See, *O'Leary v. Coenen, supra*; *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972).

### APPLICATION OF THE LAW TO HEINS

The present case illustrates the frustration inherent in the classification scheme. In many instances, recovery by an entrant has become largely a matter of chance, dependent upon the pigeonhole in which the law has put him, e.g., "trespasser," "licensee," or "invitee." *Ford v. Bd. of County Com'rs*, 118 N.M. 134, 879 P.2d 766 (1994); *Peterson v. Balach, supra*. When he was injured, Heins was exiting a county hospital, using the main entrance to the hospital, over

the lunch hour. If Heins had been on the hospital premises to visit a patient or purchase a soft drink from a vending machine, he could have been classified as an invitee. See, e.g., *Syas v. Nebraska Methodist Hospital Foundation*, 209 Neb. 201, 307 N.W.2d 112 (1981). However, he came to visit his daughter and was denied recovery as a matter of law.

Thus, Heins was denied the possibility of recovering under present law, merely because on this trip to the hospital he happened to be a licensee rather than an invitee. In the instant case, the hospital would undergo no additional burden in exercising reasonable care for a social visitor such as Heins, because it had the duty to exercise reasonable care for its invitees. A patient visitor could have used the same front entrance at which Heins fell and would have been able to maintain a negligence action; however, Heins has been denied the opportunity to recover merely because of his status at the time of the fall.

Modern commercial society creates relationships between persons not contemplated by the traditional classifications. See *Kermarec v. Compagnie Generale, supra.* Yet we have continued to pigeonhole individuals as licensees or invitees as a convenient way to ascertain the duty owed by the landowner. For instance, in *Presho v. J. M. McDonald Co.*, 181 Neb. 840, 151 N.W.2d 451 (1967), a customer of a retail store was injured when she entered a back room of the store with the permission of the store manager, in order to retrieve an empty box. We held the customer to be a licensee rather than an invitee because "[s]he was on an errand personal to herself, not in any way connected with the business of the defendant." 181 Neb. at 843-44, 151 N.W.2d at 454. We recognized that while she was in the store proper, she was an invitee. However, we found her to be a licensee when she entered the back room, despite the fact that the ladies' restroom was located in this back room area and was used by customers to the store.

The common-law status classifications should not be able to shield those who would otherwise be held to a standard of reasonable care but for the arbitrary classification of the visitor as a licensee. We find no merit in the argument that the duty of reasonable care is difficult for a fact finder to understand

or apply, because it has been used successfully with regard to invitees and is the standard used in almost all other tort actions.

We conclude that we should eliminate the distinction between licensees and invitees by requiring a standard of reasonable care for all lawful visitors. We retain a separate classification for trespassers because we conclude that one should not owe a duty to exercise reasonable care to those not lawfully on one's property. Adopting this rule places the focus where it should be, on the foreseeability of the injury, rather than on allowing the duty in a particular case to be determined by the status of the person who enters upon the property.

Our holding does not mean that owners and occupiers of land are now insurers of their premises, nor do we intend for them to undergo burdens in maintaining such premises. We impose upon owners and occupiers only the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors. Among the factors to be considered in evaluating whether a landowner or occupier has exercised reasonable care for the protection of lawful visitors will be (1) the foreseeability or possibility of harm; (2) the purpose for which the entrant entered the premises; (3) the time, manner, and circumstances under which the entrant entered the premises; (4) the use to which the premises are put or are expected to be put; (5) the reasonableness of the inspection, repair, or warning; (6) the opportunity and ease of repair or correction or giving of the warning; and (7) the burden on the land occupier and/or community in terms of inconvenience or cost in providing adequate protection.

Although we have set forth some of the factors to be considered in determining whether a landowner or occupier has exercised reasonable care for the protection of lawful visitors, it is for the fact finder to determine, on the facts of each individual case, whether or not such factors establish a breach of the duty of reasonable care.

## CONCLUSION

We determine that the invitee-licensee distinction should be abandoned and the new rule applied in the instant case.

Considering that other litigants may have relied on our previous rule and incurred time and expense in prosecuting or defending their claims, we conclude, with the exception of the instant case, that the rule announced today shall be applied only to all causes of action arising after this date. We reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

FAHRNBRUCH, J., dissenting.

I respectfully dissent from the majority opinion.

The majority opinion states that modern society does not contemplate such traditional classifications as invitee and licensee. However, the same majority opinion states that the majority of states have retained the common-law distinctions of invitee and licensee.

In Nebraska, we have had no problem in assigning liabilities based upon invitee and licensee status, as witnessed by the recent unanimous opinions *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996), and *Blackbird v. SDB Investments*, 249 Neb. 13, 541 N.W.2d 25 (1995).

The majority opinion dismantles longstanding common law by eliminating the concept of licensee, thereby forcing a landowner to treat a person who is allowed to enter or remain upon premises with the same standard of care as a person who is invited onto the premises for the mutual benefit of both landowner and invitee.

Under the majority opinion, a landowner owes a duty of reasonable care to an individual who becomes injured by conducting activities on the premises without the landowner's express permission or knowledge. From this moment on, public and private institutions, as well as residential homeowners, must be especially aware of unknown, uninvited individuals who take advantage of their land and facilities.

In *McCurry v. Young Men's Christian Assn.*, 210 Neb. 278, 313 N.W.2d 689 (1981), an individual brought an action against a Young Men's Christian Association (YMCA) as a result of an injury which arose from a fall while the individual was playing basketball on an outdoor asphalt playground owned by the YMCA. The plaintiff was not a member of the

YMCA and had not obtained any express permission to use the playground. This court held that the plaintiff was a licensee and affirmed the trial court's directed verdict in favor of the YMCA. Under the majority's opinion, YMCA's and like institutions will be subject to lawsuits which hold them to a duty to treat such uninvited users of their facilities with the same standard of care as the paying members of the institution.

This court should not enact public policy which, in effect, socializes the use of privately owned property to the extent that the landowner owes the same duty to all, except trespassers, who enter the owner's land. It is not the function of the court to create a liability where the law creates none. *Acton v. Wymore School Dist. No. 114*, 172 Neb. 609, 111 N.W.2d 368 (1961).

Under the majority's opinion, a homeowner would have potential liability for any number of not only uninvited but unwanted solicitors or visitors coming to the homeowner's door.

CAPORALE, J., joins in this dissent.