MARIA AGUALLO, APPELLANT AND CROSS-APPELLEE, V.
CITY OF SCOTTSBLUFF, A POLITICAL SUBDIVISION,
APPELLEE AND CROSS-APPELLANT.
678 N.W.2d 82

Filed April 16, 2004.   No. S-02-879.

Maren Lynn Chaloupka and Robert Paul Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, for appellant.

Steven W. Olsen, of Simmons Olsen Law Firm, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, Maria Aguallo, injured both of her ankles when she fell in a parking lot owned by the City of Scottsbluff (City). Aguallo claims that the City's failure to perform proper maintenance caused the surface of the parking lot to become dangerously eroded. She further claims that her fall occurred when she stepped onto the eroded area. Following a bench trial, the court determined that the City and Aguallo were equally negligent and entered judgment for the City. We conclude that because the court used the wrong standard to evaluate the City's negligence, its comparison of the City's and Aguallo's negligence was flawed. Accordingly, we reverse, and remand for a new trial.

## I. FACTUAL BACKGROUND

### 1. PARKING LOT AND AGUALLO'S FALL

After finishing work on the night of July 20, 1999, Aguallo walked to her car, which was parked in a city-owned parking lot. Aguallo's employer had instructed her and her coworkers to park their vehicles in the parking lot.

The parking lot has three rows of diagonal parking. Concrete tire barriers separate the first row from the second and the second row from the third. The barriers, which are wide enough for people to walk on, are 8 inches high. Aguallo had parked her car next to one of these barriers on the day of the accident. Photographs

show erosion in the area where the asphalt meets this parking barrier. The erosion ran the length of the parking barrier, and the width of the eroded area varied from 8 to 14 inches. The depth of the eroded area was disputed, but the court determined that it was "somewhat more than an inch deep and somewhat less than two inches deep." According to Aguallo, when she was returning to her car, she stepped down off the barrier and onto the edge of the eroded area, the uneven surface caused her ankle to twist, and she fell.

## 2. City's Knowledge of Eroded Area

The parties dispute whether the City should have known about the erosion at the time that Aguallo fell. City workers inspect the city-owned parking lots once each year after the freeze-and-thaw cycle to determine if any repairs need to be made. In addition to this inspection, the City relies on the workers who sweep, paint, and weed the parking lot to report conditions that might need maintenance.

Aguallo presented expert testimony from a civil engineer that the erosion would most likely have taken 2 to 3 years to develop. Thus, according to Aguallo, the City, employing its normal inspection routine, would have had ample opportunity to discover and repair the eroded area in the parking lot before her fall.

The City presented testimony from its transportation supervisor, who has experience with asphalt erosion. He claimed that the 1998-99 freeze-and-thaw cycle caused cracking in the asphalt and that a heavy rain during a hailstorm on June 27, 1999, washed away the loosened asphalt, leaving behind the eroded area. The City further notes that it had no reasonable opportunity to discover the eroded area because the yearly inspection of the parking lot occurred in May 1999 and the only sweeping, painting, or weeding was done before the hailstorm.

## 3. Aguallo's Knowledge of Eroded Area

The parties also dispute whether Aguallo should have known about the eroded area when she fell. Before her fall, Aguallo had parked her vehicle in and walked through the parking lot several times during the previous 3 weeks. She testified, however, that up to the time of her fall, she had not noticed any defects in the surface of the parking lot other than a crack in one of the cement

parking barriers. She explained that when she walked through the parking lot, she was not generally "pinpointing anything."

Aguallo also claimed that she did not notice the eroded area before she stepped off the concrete barrier on the night of the accident. At the time, Aguallo was carrying materials which she had taken home from work. In addition, she testified that she looked down before she stepped, but that because of poor lighting in the parking lot, the eroded area was dark.

Several of Aguallo's coworkers also testified that the parking lot was poorly lit. However, a civil engineer who measured the lighting in the parking lot for the City testified that the lighting at the spot where Aguallo fell met the standards published by the Illuminating Engineering Society of North America.

## II. PROCEDURAL BACKGROUND

Aguallo filed a petition under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997), alleging that the City's negligence had caused her injuries. In its amended answer, the City denied Aguallo's allegations and affirmatively alleged that Aguallo had been contributorily negligent. In addition, the City alleged that Aguallo's claim was based upon the performance or the failure to perform a discretionary function and that thus, the City was exempt from liability under the discretionary function exemption of the Political Subdivisions Tort Claims Act. See § 13-910(2).

After a bench trial, the court determined that the eroded area was a "hazard" which was "prone to cause injury" and that the City was negligent in failing to discover and repair the eroded area. But the court further determined that Aguallo was equally negligent in failing to notice the eroded area and to take proper precautions to avoid injury. Accordingly, the court entered judgment for the City. Following the denial of her motion for a new trial, Aguallo appealed.

## III. ASSIGNMENTS OF ERROR

Aguallo assigns that the court erred in (1) finding that her negligence was equal to the City's negligence and (2) overruling her motion for a new trial.

On cross-appeal, the City assigns that the court erred in failing to find that (1) the City was not negligent, (2) the City was

exempt from liability under the discretionary function exemption of the Political Subdivisions Tort Claims Act, and (3) Aguallo's claims were too speculative to be actionable.

## IV. STANDARD OF REVIEW

In actions brought under the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the verdict, it must be considered in the light most favorable to the successful party. *Norman v. Ogallala Pub. Sch. Dist.*, 259 Neb. 184, 609 N.W.2d 338 (2000).

## V. ANALYSIS

### 1. COMPARATIVE NEGLIGENCE

Aguallo assigns as error the court's determination that her negligence was equal to the City's. The purpose of comparative negligence is to allow triers of fact to compare relative negligence and to apportion damages on that basis. *Baldwin v. City of Omaha*, 259 Neb. 1, 607 N.W.2d 841 (2000). Determining apportionment is solely a matter for the fact finder, and its action will not be disturbed on appeal if it is supported by credible evidence and bears a reasonable relationship to the respective elements of negligence proved at trial. *Id.* But here, in determining that the City had been negligent, the court used the wrong standard of care. Our task is to determine how this affects our review of the trial court's apportionment decision.

### (a) Specialized Standard of Care for Premises Liability Cases Involving Conditions on Premises

In *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996), we abrogated the distinction between licensees and business invitees for premises liability cases. Before *Heins*, this court held that for a business invitee to recover from an owner or occupier for an injury caused by a condition on the owner or occupier's premises, it was not enough for the business invitee to show that his or her injuries were caused by the owner or occupier's failure to exercise the ordinary duty of reasonable care. Instead, we required the business invitee to prove that the owner or occupier had breached a specialized standard of care that included three

additional elements. Specifically, we required the business invitee to prove: *(1) the defendant created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the defendant should have realized the condition involved an unreasonable risk of harm to the business invitee; (3) the defendant should have expected that a business invitee such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger;* (4) the defendant failed to use reasonable care to protect the business invitee against the danger; and (5) the condition was a proximate cause of damage to the business invitee. See, *Derr v. Columbus Convention Ctr.*, 258 Neb. 537, 604 N.W.2d 414 (2000); *Richardson v. Ames Avenue Corp.*, 247 Neb. 128, 525 N.W.2d 212 (1995).

The language we used in *Heins* created some confusion whether, in addition to abrogating the distinction between business invitees and licensees, we had also eliminated the specialized standard of care for cases in which the plaintiff claimed an injury caused by a condition on the owner or occupier's premises. In *Heins*, we stated:

> Our holding does not mean that owners and occupiers of land are now insurers of their premises, nor do we intend for them to undergo burdens in maintaining such premises. We impose upon owners and occupiers only the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors. Among the factors to be considered in evaluating whether a landowner or occupier has exercised reasonable care for the protection of lawful visitors will be (1) the foreseeability or possibility of harm; (2) the purpose for which the entrant entered the premises; (3) the time, manner, and circumstances under which the entrant entered the premises; (4) the use to which the premises are put or are expected to be put; (5) the reasonableness of the inspection, repair, or warning; (6) the opportunity and ease of repair or correction or giving of the warning; and (7) the burden on the land occupier and/or community in terms of inconvenience or cost in providing adequate protection.

*Heins v. Webster County*, 250 Neb. 750, 761, 552 N.W.2d 51, 57 (1996).

In *Herrera v. Fleming Cos.*, 10 Neb. App. 987, 641 N.W.2d 417 (2002), the Nebraska Court of Appeals construed the language in *Heins* as eliminating the specialized standard of care for cases in which a plaintiff claimed an injury caused by a condition on an owner or occupier's premises. According to the Court of Appeals, after *Heins*, a lawful visitor needed only to show that the owner or occupier failed to exercise reasonable care under all of the circumstances and that the failure to exercise reasonable care caused the lawful visitor injury. Whether the owner or occupier had exercised reasonable care was to be determined by evaluating the nonexhaustive list of factors set out in *Heins*.

■ We reversed the Court of Appeals' *Herrera* decision, concluding that *Heins* had not "abrogate[d] the elements necessary to establish liability on the part of a possessor of land for injury caused to a lawful visitor by a condition on the land." *Herrera v. Fleming Cos.*, 265 Neb. 118, 122, 655 N.W.2d 378, 382 (2003). In other words, we reaffirmed our commitment to the specialized standard of care for the owner or occupier in cases when a lawful visitor claims that he or she was injured by a condition on the owner or occupier's premises. Thus, in such cases, the owner or occupier is subject to liability if the lawful visitor proves (1) the owner or occupier either created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition; (2) the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) the owner or occupier should have expected that a lawful visitor such as the plaintiff either (a) would not discover or realize the danger or (b) would fail to protect himself or herself against the danger; (4) the owner or occupier failed to use reasonable care to protect the lawful visitor against the danger; and (5) the condition was a proximate cause of damage to the lawful visitor. *Id.* The several factors described in *Heins* regarding reasonable care are to be considered under subsection (4) above. *Id.*

### (b) Effect of Trial Court's Reliance on
### Court of Appeals' *Herrera* Decision

The trial court, when it decided this case, did not have the benefit of our decision overruling the Court of Appeals' *Herrera*

decision. As a result, it did not use the specialized standard of care for cases involving an injury caused by a condition on an owner or occupier's premises. We need to determine how this error affected the court's comparison of negligence.

▉ Comparative negligence abrogates the common-law concept of contributory negligence, thus relieving both parties of an all-or-nothing situation, and substitutes apportionment of the damages by fault. *Baldwin v. City of Omaha*, 259 Neb. 1, 607 N.W.2d 841 (2000). To compare fault, it is critical that the fact finder knows the correct standard of care for each party. For example, in some situations, like the one here, the law imposes a specialized standard of care on one party (e.g., the City), while imposing only the ordinary standard of reasonable care on the other (e.g., Aguallo). That the one party fell short of the specialized standard of care, while the other party failed to meet only the ordinary standard of reasonable care is a legitimate factor to be considered in apportioning fault. Further, another important factor to be considered in apportioning fault is "the extent to which [each person's risk-creating] conduct failed to meet the applicable legal standard." Restatement (Third) of Torts: Apportionment of Liability § 8, comment *c*. at 87 (2000). That party X deviated substantially from its standard of care while party Y's deviation was only slight suggests that X should shoulder a higher burden for the damage done. But it would be impossible for a fact finder to accurately gauge how far a party has deviated from its standard of care if the fact finder does not have the correct understanding of the party's standard of care.

▉ Given the importance of a correct understanding of each party's standard of care, we conclude that a fact finder cannot properly compare a plaintiff's negligence to a defendant's negligence when it uses the incorrect standard of care for either party. Cf. *Dever v. Goranflo*, 473 S.W.2d 131 (Ky. 1971). Thus, when a fact finder has used an incorrect standard of care in apportioning fault between a plaintiff and a defendant, the appropriate appellate remedy generally will be to remand for a new trial so that the fact finder can employ the correct standard in its apportionment analysis.

## 2. City's Cross-Appeal

Because the trial court's comparative negligence analysis was flawed, the appropriate remedy for this case is to remand for a new trial unless the City can offer some reason why we should not do so. The City argues that remand is unnecessary for three reasons. First, it argues that it is immune from liability because the case falls within the discretionary function exemption of the Political Subdivisions Tort Claims Act. Second, the City argues that Aguallo made admissions in a pretrial deposition that makes her claim speculative. Third, the City argues that Aguallo cannot show that the City breached the specialized standard of care for injuries caused by a condition on its premises.

### (a) Discretionary Function Exemption

The Political Subdivisions Tort Claims Act does not apply to "[a]ny claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused." § 13-910(2).

A court engages in a two-step analysis to determine if the discretionary function exemption applies. First, the court must consider whether the action is a matter of choice for the acting employee. *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. 406, 591 N.W.2d 532 (1999). This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice. *Id.*

If the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exemption was designed to shield. *Id.* As we have explained,

> [t]he basis for the discretionary function exception was the desire to " ' " " 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' . . ." ' " . . . The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy. " ' "In sum, the discretionary function exception insulates the Government from

liability if the action challenged in the case involves the permissible exercise of policy judgment." ' "
*Id.* at 417, 591 N.W.2d at 540 (quoting *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994)).

Here, the City contends that the erosion to the parking lot occurred 3 to 4 weeks before Aguallo's fall, when a hailstorm washed loosened asphalt out of the parking lot. The hailstorm caused widespread damage throughout the City. According to the City, it decided to shift its resources to cleanup and repair of the storm damage. The employees the City relied on to report erosion in the parking lot—i.e., weeding, painting, and sweeping crews—were shifted to the cleanup and repair operation. Thus, according to the City, its decision to forgo the ordinary maintenance routine for the parking lot resulted in its failure to discover and repair the damage to the parking lot.

The City's argument is dependent upon its theory that the erosion in the parking lot occurred because of the hailstorm. But this is not Aguallo's theory of the case. She contends that the damage to the parking lot occurred 2 to 3 years before her fall. Under Aguallo's theory, the City's failure to discover the erosion in the parking lot was not the result of a conscious policy decision. Rather, it was the result of the failure of the City employees who were responsible for discovering parking lot erosion to discover the eroded area despite repeated opportunities to do so.

Thus, whether the discretionary function exemption applies depends upon whether the hailstorm caused the erosion. If Aguallo's theory that the hailstorm did not cause the erosion is accepted, the first part of the test for the discretionary function exemption is not met because the conduct of the pertinent employees did not involve "a matter of choice." See *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. at 417, 591 N.W.2d at 540. But if the City's theory is accepted, then the conduct did involve a matter of choice and the question would become whether the decision of the City officials to forgo the usual inspections at the parking lot involved a judgment the discretionary exemption was meant to shield.

Whether the hailstorm caused the erosion to the parking lot is a question of fact. The court did not specifically address whether the discretionary function exemption applied because it resolved

this case on the comparative negligence issue. Some evidence in the record supports the City's interpretation that the hailstorm caused the erosion; other evidence supports Aguallo's theory that the erosion predated the hailstorm. Given the conflicting evidence, we decline the City's invitation to resolve the discretionary function exemption issue as a matter of law. Instead, the trial court can resolve the issue on remand.

### (b) Aguallo's Alleged Admissions During Her Deposition

At trial, Aguallo testified that she fell when she stepped down from the parking barrier onto the edge of the eroded area. According to the City, however, during her deposition, Aguallo admitted that she did not know if she fell when she stepped onto the eroded edge of the parking lot. The City claims that it was possible that she had simply lost her balance when she first began to step down from the parking barrier. The City claims that Aguallo's deposition testimony is fatal to her case because it would require the fact finder to guess whether the City's failure to repair the eroded area had caused her to fall. See *Swoboda v. Mercer Mgmt. Co.*, 251 Neb. 347, 557 N.W.2d 629 (1997).

A party who changes his or her testimony during litigation is bound by his or her earlier statements upon proof that the testimony pertains to a vital point, that it is clearly apparent the party has made the change to meet exigencies of the pending case, and that there is no rational or sufficient explanation for the changes in testimony. *Breeden v. Anesthesia West*, 265 Neb. 356, 656 N.W.2d 913 (2003). The rule does not apply, however, when the party's earlier statements are ambiguous. Here, Aguallo's deposition testimony could be interpreted as the City suggests. Alternatively, it is possible to interpret her testimony to mean that the fall occurred when she stepped onto the eroded asphalt, but that she was unsure which way her ankle twisted as she fell. Thus, we refuse to treat Aguallo's deposition testimony as an admission that she was unsure what had caused her to fall.

### (c) City's Negligence Under Specialized Standard of Care for Owners or Occupiers

To show that the City is liable for her injuries, Aguallo needed to show that (1) the City either created the condition, knew of the

condition, or by the exercise of reasonable care would have discovered the condition; (2) the City should have realized the condition involved an unreasonable risk of harm to Aguallo; (3) the City should have expected that a lawful visitor such as Aguallo either (a) would not discover or realize the danger or (b) would fail to protect herself against the danger; (4) the City failed to use reasonable care to protect Aguallo against the danger; and (5) the condition was a proximate cause of damage to Aguallo. Because the trial court was relying on the Court of Appeals' decision in *Herrera v. Fleming Cos.*, 10 Neb. App. 987, 641 N.W.2d 417 (2002), it did not consider the first three of these elements. The City asks us to determine as a matter of law that Aguallo failed to prove these three elements.

### (i) City's Failure to Discover Erosion

First, the City claims that there is no evidence that it created the condition, knew of the condition, or by the exercise of reasonable care would have discovered the condition. We agree that there is no evidence that the City either created or knew of the condition. Aguallo, however, presented evidence which, if believed, would have allowed a reasonable fact finder to determine that the erosion had existed for 2 to 3 years, but that the City's inspection process had failed to discover it. The City, as noted in our discussion of the discretionary function exemption, presented evidence suggesting the hailstorm had caused the erosion and that between the time of the hailstorm and the time of Aguallo's fall, the City did not have a reasonable opportunity to discover the erosion. The trial court, because it did not use the specialized standard of care, did not resolve this disputed factual question, and we decline to do so.

### (ii) Unreasonable Risk of Harm

Next, the City claims that the erosion, as a matter of law, did not present an unreasonable risk of harm to Aguallo. The City relies on *Doht v. Village of Walthill*, 207 Neb. 377, 299 N.W.2d 177 (1980). In *Doht*, the plaintiff fell when she stepped on a raised portion of a sidewalk. The rise in the sidewalk was 1½ to 1¾ inches. The trial court entered judgment for the plaintiff. We reversed, concluding that the 1½- to 1¾-inch rise in the sidewalk

was such a minor irregularity that negligence could not be predicated upon it. *Id.*

The City argues that, like *Doht*, this case involves only a slight hole or depression and that as a matter of law, we should conclude that it did not present an unreasonable risk of harm. But *Doht* does not state a per se rule that a political subdivision is automatically not liable for slight holes or depressions in public ways. See *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996). While a political subdivision is not an insurer of a pedestrian's safety, it can be held liable if it should have reasonably anticipated that a hole or depression presented an unreasonable danger. See, *id.*; *Doht v. Village of Walthill, supra.*

Here, the erosion was only 1 to 2 inches deep. But, unlike *Doht*, the erosion was at the bottom of an 8-inch-high parking barrier. A reasonable fact finder could conclude that because pedestrians would be forced to encounter the erosion as they stepped off the 8-inch-high parking barrier, the City should have reasonably anticipated that the hole or depression presented an unreasonable danger. Thus, we refuse to resolve the question as a matter of law.

### (iii) Open and Obvious Danger

To show that the City breached its specialized standard of care, Aguallo also needed to show that the City should have expected that a lawful visitor such as Aguallo either (1) would not discover or realize the danger or (2) would fail to protect herself against the danger. The City argues that the court made an express ruling that Aguallo failed to prove this element of the specialized standard of care. It relies on the following comments made by the court after closing arguments:

> Now on the law, I don't agree with counsel for both parties that NJI 8.22 [i.e., the specialized standard of care] determines the law of this case because if it does, the plaintiff loses. There's no question that the plaintiff cannot prove the elements *because the plaintiff cannot prove that the defendant should have expected that a one-inch hole would be something that people would not discover or realize the danger.* It can't be proved. So if that was the standard, I think I would find — I know that I would find that the

plaintiff didn't prove what they have to prove to show negligence, but I don't think 8.22 applies, I never have.

(Emphasis supplied.)

Generally, when the danger posed by a condition is open and obvious, the owner or occupier is not liable for harm caused by the condition. See *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629 (1982). However, "[d]espite the fact that the danger may be open and obvious or known, the possessor of the land may owe the duty if he should expect that the [lawful visitor] will fail to protect himself against the hazard." *Id.* at 222, 322 N.W.2d at 632. See, also, Restatement (Second) of Torts § 343 A (1965). As the comments to the Restatement explain:

> There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.
>
> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.

Restatement, *supra*, comment *f.* at 220. See *Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 438 N.W.2d 485 (1989).

Assuming, without deciding, that the trial court's comments following the trial constitute findings of fact, the court's analysis of the open and obvious danger rule was incomplete. Although it determined that the danger was open and obvious, it did not decide whether the City should have anticipated that persons, such as Aguallo, would fail to protect themselves despite the open and obvious risk. Our case law requires this analysis. See, *Burns v. Veterans of Foreign Wars, supra*; *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988).

Further, the evidence presented at trial shows that whether the City should have anticipated that persons such as Aguallo would fail to protect themselves despite the open and obvious risk was a disputed question. Aguallo presented evidence showing that the lot was meant to provide parking for those shopping and working in downtown Scottsbluff. A reasonable fact finder could conclude that the City should have anticipated that the users of the parking lot would fail to protect themselves from the erosion because they might have forgotten about it while shopping or at work, or because they were distracted by items they were carrying. Cf., *Burns v. Veterans of Foreign Wars, supra*; Restatement, *supra*, illustration 4. In addition, the fall occurred at night and Aguallo presented evidence showing that the lighting in the parking lot was of questionable quality. Thus, a fact finder could also reasonably conclude that the City should have anticipated that persons using the parking lot would fail to protect themselves because the poor lighting did not illuminate the eroded area. Given that the trial court did not resolve whether the City should have anticipated that persons, such as Aguallo, would fail to protect themselves despite the open and obvious nature of the risk, we will not do so on appeal.

## VI. CONCLUSION

We determine that the failure of the court to use the appropriate standard of care in determining the City was negligent rendered its comparison of negligence analysis invalid and entitles Aguallo to a new trial. On remand, Aguallo will have the burden to prove the five elements previously set out. If the court concludes that Aguallo has met her burden of proof on these five elements, then the City will have the burden to show that Aguallo was contributorily negligent.

REVERSED AND REMANDED FOR A NEW TRIAL.