Cole Hodson, appellant, v.
Bradley Taylor et al.,
appellees.
___ N.W.2d ___

Filed March 13, 2015.    No. S-13-1131.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing demonstrate that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the summary judgment evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the lower court's conclusions.

4. **Negligence: Liability: Proximate Cause.** In premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor.

5. **Recreation Liability Act.** Nebraska's Recreation Liability Act applies only to premises liability actions.

6. **Negligence.** Premises liability causes of action cannot be taken against one who is not an owner or occupant of the property.

7. ____. Not every negligence action involving an injury suffered on someone's land is properly considered a premises liability case.

8. ____. Under a premises liability theory, a court is generally concerned with either a condition on the land or the use of the land by a possessor.

9. ____. In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.

10. **Negligence: Proof.** Foreseeability is analyzed in the context of breach and is used as a factor in determining whether there was a breach of the duty of reasonable care.

11. **Negligence.** A person acts negligently if the person does not exercise reasonable care under all the circumstances.

12. ____. Primary factors to consider in ascertaining whether a person's conduct lacks reasonable care include the foreseeable likelihood that the person's conduct will result in harm, the foreseeable severity of any harm that may ensue, and the burden of precautions to eliminate or reduce the risk of harm.

13. ____. Foreseeability is analyzed as a fact-specific inquiry into the circumstances that might have placed the defendant on notice of the possibility of injury.

14. ____. Small changes in the facts may make dramatic change in how much risk is foreseeable.

15. ____. The law does not require precision in foreseeing the exact hazard or consequence which happens; it is sufficient if what occurs is one of the kinds of consequences which might reasonably be foreseen.

16. ____. Though questions of foreseeable risk are ordinarily proper for a trier of fact, courts may reserve the right to determine that the defendant did not breach its duty of reasonable care if reasonable people could not disagree about the unforeseeability of the injury.

17. **Negligence: Invitor-Invitee: Liability.** Owners or occupiers have breached their duty if they know, or by exercise of reasonable care should have realized, that a condition on their land would create a risk from which visitors would fail to protect themselves.

18. ____: ____: ____. A land possessor is not liable to a lawful entrant on the land unless the land possessor had or should have had superior knowledge of the dangerous condition on the land.

19. ____: ____: ____. Land possessors have a duty to attend to the foreseeable risks in light of the then-extant environment, including foreseeable precautions by others.

20. **Negligence: Waters.** A duty to provide for a water's passage through the landowner's property is owed to adjoining landowners, and not to guests of adjoining landowners.

21. **Negligence.** All people owe a basic duty to conform to the legal standard of reasonable conduct in light of the apparent risk.

22. **Negligence: Waters: Invitor-Invitee.** A lake association owes to the lawful guest or visitor a duty to protect the visitor against those parts of the land which it has reason to know of, with reasonable care would have discovered, or should have realized involved an unreasonable risk of harm to the visitor.

23. **Negligence.** Generally, when a dangerous condition is open and obvious, the owner or occupier is not liable in negligence for harm caused by the condition.

24. ____. Under the open and obvious doctrine, a possessor of land is not liable to his or her invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

25. ____. A condition is considered obvious when the risk is apparent to and of the type that would be recognized by a reasonable person in the position of the invitee.

26. **Negligence: Waters.** A body of water is not a concealed, dangerous condition, because the public recognizes that bodies of water vary in depth and that sharp changes in the bottom may be expected.

27. **Negligence.** If an owner or occupier should have anticipated that persons using the premises would fail to protect themselves, despite the open and obvious risk, then the open and obvious doctrine does not apply.

Appeal from the District Court for Washington County: James G. Kube, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

E. Terry Sibbernsen and Andrew D. Sibbernsen, of Sibbernsen, Strigenz & Sibbernsen, P.C., and Jeffrey B. Farnham and Andrew W. Simpson, of Farnham & Simpson, P.C., L.L.O., for appellant.

David M. Woodke and Earl G. Green III, of Woodke & Gibbons, P.C., L.L.O., for appellees Bradley Taylor, Laura Taylor, and Whitney Taylor.

Mark D. Fitzgerald, of Fitzgerald, Vetter & Temple, for appellee Willers Cove Owners Association.

Stephen L. Ahl and Krista M. Carlson, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellees Ronald D. Willers and Marilyn M. Willers.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

McCormack, J.
## I. NATURE OF CASE
Cole Hodson suffered a catastrophic injury when he dove into the Willers Cove lake near Pilger, Nebraska. Cole brings a tort action against Bradley Taylor and Laura Taylor (collectively the Taylors) and their daughter, Whitney Taylor, as his hosts at the lake; the Willers Cove Owners Association (the WCOA), claiming the lake association should have known of dangerous conditions in the lake; and Ronald D. Willers and Marilyn M. Willers (collectively the Willers), for negligently constructing a culvert which led to the dangerous condition that caused Cole's injury. The district court dismissed all of Cole's claims in summary judgment. Cole now appeals.

## II. BACKGROUND

### 1. Accident

On the date of the accident, the Taylors were residents of and owned a home located at the Willers Cove lake community in Stanton County, Nebraska.

On June 26, 2010, Cole and three other friends—Adam Hodson, Caitlin Hoer (Caitlin), and Johnny Forsen (Johnny)—were invited by Whitney to the residence of the Taylors for the purpose of swimming and boating. Adam was Whitney's boyfriend, Cole was Adam's cousin, Johnny was Cole's childhood friend, and Caitlin was a friend of Whitney. Each member of the group was around 18 years old at the time. Shortly after arrival, the group boarded the Taylors' pontoon boat and proceeded on the Willers Cove lake. Deposition testimony among the people on the boat differs, but either Whitney or Adam operated the boat. The pontoon boat stopped twice at different locations. While stopped, Cole and Johnny jumped off the pontoon boat and swam in the lake.

Cole recalls that he had at least two beers since arriving at Willers Cove and before his final dive into the water. Johnny recalls that each member of the group had three beers before Cole was injured.

The last stop was made on the west side of the lake, somewhere between 50 and 200 feet from the north shoreline. Whitney stated that she chose this place for jumping and swimming because she had stopped there in the past.

Cole stated he could not see below the surface of the lake and jumped into the lake without testing the depth. Johnny also stated that the water was "pretty muddy." Further, in Cole's deposition, counsel asked:

> Q[:] Okay. Now, did you know when you first dove into the lake that if you couldn't see below the surface on a lake that there was a possibility that there could be an object or shallow depth?
>
> . . . .
>
> A[:] Possibly.
>
> Q[:] Okay. And how is it that you knew that could be the case?

A[:] That's the case in any situation like that.

Cole also admitted that the depth of lake bottoms can be different at different places in a lake or pond.

After stopping at other locations in the lake, the boat came to a stop in its final place before Cole's injury. Cole is unsure how far this was from the shoreline. Both Cole and Johnny dove, jumped, or flipped "several" or "five or more" times into the water at this location, and they swam around in the water. Cole says that during each of those dives, and during his time swimming at this location, he did not touch the bottom of the lake. Deposition testimony of all the people on the boat indicates that no one formally tested the depth of the lake at this location.

After "several" successful dives at the last location, Cole dove and abruptly came into contact with something in the water, which he assumes to be the bottom of the Willers Cove lake. Cole stated in his deposition that he does not know for certain that he hit the bottom of the lake, because he does not remember anything after his final dive into the lake. As a result of the dive, Cole suffered a "C5 complete spinal cord injury." The C5 spinal cord injury has left Cole paralyzed and without feeling from the chest down. He has function in his shoulders, but only limited flexion in his hands and wrists.

Johnny left the boat to retrieve Cole after the accident. Johnny testified that when he jumped off the boat this final time, he could walk for a few feet because the water in that location was only about "knee high." But, before he could get to Cole, the depth dropped off again and he had to swim. This conflicts with Johnny's original statement in which he said that he had to swim to Cole after exiting the boat. Adam also testified that Johnny had to swim to get to Cole.

## 2. Willers Cove

The Willers once owned and operated a sand and gravel company. The Willers Cove lake was created where they dug sand and gravel from the earth that was later filled in with ground water. The Willers were the initial owners of Willers Cove before deeding the lake to the WCOA.

On July 20, 2005, the Willers executed a quitclaim deed conveying ownership of the lake to the WCOA. When the lake was transferred to the WCOA in 2005, it was a completed project. The Willers did nothing more to the lake itself after the transfer. The WCOA now owns, operates, maintains, and manages the Willers Cove Lake.

The WCOA passes rules and regulations for the Willers Cove lake. Prior to 2007, the WCOA had a rule that there would be no swimming more than 50 feet from the shore of the Willers Cove lake. However, such rule was not readopted in 2007. One of the directors of the WCOA stated that this regulation was either unintentionally omitted or purposefully left out. He stated that the rule seemed meaningless and would be difficult to enforce, though he does not recall exactly why the rule was omitted from adoption in 2007.

Willers Cove is a private lake. All people with residences abutting the lake must be a member of the WCOA. One must be a member or guest of a member of the WCOA to be able to use the lake.

### 3. POTENTIALLY DANGEROUS CONDITIONS
### AT WILLERS COVE

Cole argues that the sand along the north shoreline was known to sometimes cause potentially dangerous conditions in the lake, because the sand was unstable. The evidence shows that members of the WCOA and the Willers discussed this unstable sand condition at a meeting in 2004.

Members of the lake community were not positive as to the depth of the lake, but Bradley testified that he had knowledge of the depth of the lake based on the depth finder installed on his boat. He stated that the deepest part of the lake is 50 feet and that it tapers off in depth closer to the shore. He estimated that right next to the shore, the depth was about 4 feet deep. Bradley stated that he never noticed especially varying depths of the lake, or a sandbar in the lake. After the accident, the WCOA was compelled to have a survey done of the depth of the entire lake.

Cole retained an expert witness, Charles R. Dutill II, to opine as to potentially dangerous conditions in the Willers Cove lake. Dutill stated that the water levels rose in the year of the accident due to rainfall and some flooding. The rising water levels actually caused conditions in the lake to become shallower, because the water level caused the shoreline of the lake to move outward about 2 feet. Thus, the depth of the water at the shoreline would be significantly less than when lake elevation is lower overall. Specifically, Dutill stated that, typically, 100 feet from shore would have a depth of 18.75 feet, but that on the day of the accident, due to more water being in the lake, the conditions would be "significantly" shallower at 100 feet.

Dutill opined that the WCOA members should have known that the lake levels were rising. However, he specifically stated that he did *not* have the opinion that the WCOA members should have known that the rising lake levels would cause a dangerous, hazardous, or shallow condition in the lake.

### 4. The Willers' Property

The Willers own property at Willers Cove on the east end of the lake. On the Willers' property, there is a creek. This creek did not flow into Willers Cove prior to 2010. Sometime in 2009, Ronald replaced a small culvert on his own land with a larger culvert so that he could drive through the area on his property containing the creek. Later, Ronald removed the culvert altogether after heavy rains and flooding occurred in 2010.

However, in 2010, due to flooding in the area, the creek that ran on the Willers' property breached its banks and allegedly caused the shores of the Willers Cove lake to erode, causing additional material and water to flow into the lake. Dutill opined as to the culvert. His opinion was that the culvert was substantially undersized and insufficient to handle the appropriate flow of water in the stream. Dutill further stated the opinion that Ronald was negligent in failing to consult with or hire an engineer or other similar professional in regard to installing the culvert. However, nowhere in his opinion did Dutill state that this culvert caused the levels in the lake to rise.

He stated only that it was apparent the waterflow of the creek had changed over time. Dutill also could not connect that to the installation of the culvert.

Dutill stated in his deposition:

There are two aspects to the breakout that are significant. One is that again, with it being my opinion that a substantial amount of sediment moved into the lake, some of that sediment would have reached the location of the accident. And so that would make the depth more shallow there than would otherwise be the case. A much more significant factor is that the breakout allowed a substantial amount of water that would not normally flow into the lake to flow into the lake.

Dutill commented, "[T]here are several factors that result in more water in the lake. . . . [T]he net effect of those factors would be that . . . the edge of the lake moved more than two feet" from where it usually meets. Dutill could point to no one factor that caused the water levels in the Willers Cove lake to rise.

### 5. Allegations Against Defendants

#### (a) Allegations Against the Taylors

Cole alleges that his injuries were the direct and proximate result of negligence by the Taylors. Cole asserts that the Taylors were negligent in failing to warn users of Willers Cove, such as Cole, of the dangerous and shallow condition of the lake; in allowing Whitney, their daughter, and her guests to use the pontoon boat without supervision; and in permitting Whitney or one of her guests to drive the pontoon boat when the Taylors knew, or in the exercise of reasonable care should have known, that she was inexperienced and incompetent to operate this pontoon boat on the Willers Cove lake on the date of the accident, given the condition of the lake and the depth.

#### (b) Allegations Against the Willers

Cole alleges that his injuries were the direct and proximate result of negligence by the Willers. Cole asserts that the Willers failed to ascertain and maintain sufficient and safe

water depth in the lake, failed to warn users of the dangerous and shallow condition of the lake, failed to enforce safety rules and regulations relating to the use of the lake, failed to publish rules and regulations concerning jumping off pontoon boats into the lake, failed to warn users of the dangers of recent lake flooding, and failed to design and construct the lake and surrounding area in a manner that would prevent surface and/ or floor waters from cutting through and breaching the land adjacent to the lake, thereby enabling such waters to enter the lake and deposit sand or silt on the lake bottom.

In particular, Cole argued that Ronald negligently installed a culvert on his land, which had the effect of creating a dangerous condition in the lake, and that Ronald should have known such dangerous condition was created.

### (c) Allegations Against the WCOA

Cole alleges that his injuries were the direct and proximate result of negligence by the WCOA. Cole asserts that the WCOA failed to ascertain and maintain sufficient and safe water depth in the lake; failed to warn users, such as Cole, of the dangerous and shallow condition of the lake; failed to enforce reasonably safe rules and regulations relating to the use of the lake; failed to publish rules and regulations concerning jumping off a pontoon boat or a boat; failed to warn users of the lake of the shallow depth of the lake due to the recent flooding; and failed to post signs and warnings prohibiting individuals from using and swimming in the lake due to the recent flooding and resulting unsafe condition of the lake.

### 6. District Court Ruling

All of the defendants moved for summary judgment. As to the Taylors, the district court found that, as a matter of law, Nebraska's Recreation Liability Act (the Act)[1] barred liability in this case. In so finding, the district court found

---

[1] Neb. Rev. Stat. §§ 37-729 through 37-736 (Reissue 2008).

that the Taylors were "owners" of the lake, as defined in the Act. The district court also followed our holding in *Holden v. Schwer*,[2] which states that in order for the Act to apply, the landowner does not need to fully dedicate his or her property to the public in order to be covered by the Act, but instead, a landowner need only allow some members of the public, on a casual basis, to enter and use the land for recreational purposes in order to be protected from liability under the Act. Because the court determined that the Act applied, the court did not need to decide whether Cole's negligence claims had any merit.

As to the Willers, the court noted that the Willers had not owned or been responsible for maintaining the lake for more than 4 years prior to the date of the accident and that thus, most negligence claims were time barred by Neb. Rev. Stat. § 25-207 (Reissue 2008). As to the culvert installed by Ronald, the court noted the duty to provide for passage of water is only to adjoining landowners, and not to guests on adjoining property, like Cole. Further, although foreseeability is normally a matter for a trier of fact to determine, the court found that in this case, as a matter of law,

> [no] reasonable person could determine that it was fore-seeable that inserting a culvert in a waterway would, under extreme precipitation, cause excess water and silt to enter into Willers Cove and in turn cause an area in the lake to become excessively shallow such that someone would dive into the lake and suffer the type of injury experienced by [Cole].

As to the WCOA, the court found that the lake was an open and obvious condition that Cole should have realized presented a risk of death or serious harm. In order to apply the open and obvious doctrine, a court must also find that the WCOA could not have anticipated that such harm would come to someone like Cole.[3] The court stated that this proposition

---

[2] *Holden v. Schwer*, 242 Neb. 389, 495 N.W.2d 269 (1993).

[3] See *Aguallo v. City of Scottsbluff*, 267 Neb. 801, 678 N.W.2d 82 (2004).

"is directly related to" the issue of foreseeability and that the WCOA could not have foreseen that such harm would come to someone in the position of Cole. Finding that the WCOA could not have foreseen this condition in the lake, the court found that the open and obvious doctrine barred the WCOA's liability.

## III. ASSIGNMENTS OF ERROR

Cole assigns, consolidated and restated, that the district court erred in granting summary judgment (1) for the Taylors on the basis that the Taylors were protected from liability by the Act; (2) for the Willers on the basis that there was no duty or breach of such duty to Cole to adequately provide for passage of water from their property, because the events causing injury were unforeseeable; and (3) for the WCOA, because it was not negligent in failing to enforce regulations restricting swimming to within 50 feet from the shore and because the dangerous condition in the lake was unforeseeable.

## IV. STANDARD OF REVIEW

[1,2] We will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing demonstrate that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4] In reviewing a summary judgment, an appellate court views the summary judgment evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[5]

[3] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the lower court's conclusions.[6]

---

[4] *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013).

[5] *Id.*

[6] *Id.*

## V. ANALYSIS

### 1. Recreational Liability Act
### and the Taylors

In reviewing the complaint in this case, we find that the Taylors did not own or occupy the property on which the injury occurred. Therefore, we do not view this as a premises liability action. The Act applies only to premises liability actions, and therefore, the Act does not apply to this case. We reverse, and remand the cause to the district court for a determination on the remaining questions of the Taylors' alleged negligence.

An owner is someone "who has the right to possess, use, and convey something; a person in whom one or more interests are vested."[7] An occupant is "[o]ne who has possessory rights in, or control over, certain property or premises" or "[o]ne who acquires title by occupancy."[8]

[4] In premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor.[9]

[5] The Act applies only to premises liability actions. Under the Act, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational

---

[7] Black's Law Dictionary 1214 (9th ed. 2009).

[8] *Id*. at 1184.

[9] *Aguallo v. City of Scottsbluff, supra* note 3.

purposes or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes."[10] Therefore, when the Act applies, we read the Act only to bar liability for premises liability actions.

In this case, Cole has alleged premises liability actions against the Taylors for his injury, which occurred on the Willers Cove lake. Cole's complaint alleges that the Taylors were negligent:

> (a) In failing to warn users of Willers Cove, such as [Cole], of the dangerous and shallow condition of the lake;
>
> . . . .
>
> (d) In failing to warn or prohibit swimming in the area of the sandpit lake known as Willers Cove when the defendants knew, or in the exercise of reasonable care should have known, of the shallow and unstable condition of the lake at the area where the accident occurred;
>
> (e) In failing to warn users of the lake, such as the plaintiff, Cole . . . , of the unreasonably dangerous and unsafe condition of the lake on June 26, 2010.

[6] However, premises liability causes of action cannot be taken against one who is not an owner or occupant of the property. The Taylors were not owners or occupants of the Willers Cove lake. The record is undisputed that the Taylors are not legal owners of the lake. The WCOA is the legal owner of the lake.

Neither do the Taylors qualify as occupants of the Willers Cove lake. Under the legal definition of occupant, one may be an occupant by having control over the land in question. Though the lower court found that the Taylors were "in control" of the lake by virtue of their membership in the WCOA, we disagree. Membership in the WCOA does not give those members control of the lake that the WCOA owns. The people truly in control of the WCOA's property are those in positions of control of the WCOA itself—for example, the WCOA officers. Just because the Taylors are adjoining landowners, can

---

[10] § 37-731. See, also, *Bronsen v. Dawes County*, 272 Neb. 320, 722 N.W.2d 17 (2006).

invite guests to use the lake, and can otherwise use the lake as they wish does not make them in control of the property, nor does premises liability attach to the Taylors for what happens on that lake.

[7,8] Not every negligence action involving an injury suffered on someone's land is properly considered a premises liability case.[11] Under a premises liability theory, a court is generally concerned with either a condition on the land or the use of the land by a possessor.[12] The complaint against the Taylors does include causes of action not associated with premises liability.

We reverse the district court's determination that the Act applies, because the Act applies only to premises liability actions, and the Taylors do not have premises liability for injuries that occur due to dangerous conditions in the lake. We remand the cause for a determination of the remaining negligence allegations against the Taylors.

## 2. Alleged Negligence of the
### Willers and the WCOA

We agree with the district court and affirm its finding that, even with all reasonable inferences in favor of Cole, the Willers were not negligent, because the Willers owed no special duty to Cole and because the injury of Cole was not reasonably foreseeable to the ordinary person. However, we do find material issues of fact remaining as to the WCOA's ability to foresee the dangerous condition in the lake. We reverse, and remand the district court's summary judgment ruling as to the WCOA.

[9-12] In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.[13] Our case law has placed foreseeability in the context of breach and as a factor in determining whether there was a breach

---

[11] *Riggs v. Nickel*, 281 Neb. 249, 796 N.W.2d 181 (2011); *Semler v. Sears, Roebuck & Co.*, 268 Neb. 857, 689 N.W.2d 327 (2004).

[12] *Id.*

[13] *Gaytan v. Wal-Mart*, 289 Neb. 49, 853 N.W.2d 181 (2014).

of the duty of reasonable care.[14] A person acts negligently if the person does not exercise reasonable care under all the circumstances. "'Primary factors to consider in ascertaining whether the person's conduct lacks reasonable care [include] the *foreseeable likelihood that the person's conduct will result in harm*, the foreseeable severity of any harm that may ensue, and the burden of precautions to eliminate or reduce the risk of harm.'"[15]

[13-15] Under the Restatement (Third) of Torts, which Nebraska has adopted, foreseeability is analyzed as a fact-specific inquiry into the circumstances that might have placed the defendant on notice of the possibility of injury.[16] Stated another way, the foreseeability analysis requires us to ask what the defendants knew, "when they knew it, and whether a reasonable person would infer from those facts that there was a danger."[17] Small changes in the facts may make a dramatic change in how much risk is foreseeable.[18] The law does not require precision in foreseeing the exact hazard or consequence which happens; it is sufficient if what occurs is one of the kinds of consequences which might reasonably be foreseen.[19]

[16] Though questions of foreseeable risk are ordinarily proper for a trier of fact, courts may reserve the right to determine that the defendant did not breach its duty of reasonable care, as a matter of law, if reasonable people could not disagree about the unforeseeability of the injury.[20] Therefore, although foreseeability is a question of fact, there remain cases where

---

[14] See *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010).

[15] *Id.* at 218, 784 N.W.2d at 918 (emphasis supplied). See, also, 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 3 (2010).

[16] See, *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 14; 1 Restatement (Third) of Torts, *supra* note 15, § 7.

[17] *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 14, 280 Neb. at 217, 784 N.W.2d at 917.

[18] *Deviney v. Union Pacific RR. Co.*, 280 Neb. 450, 786 N.W.2d 902 (2010).

[19] *Fuhrman v. State*, 265 Neb. 176, 655 N.W.2d 866 (2003).

[20] *A.W. v. Lancaster Cty. Sch. Dist. 0001, supra* note 14. See *Wilke v. Woodhouse Ford*, 278 Neb. 800, 774 N.W.2d 370 (2009).

foreseeability can be determined as a matter of law, such as by summary judgment.[21]

[17] More specifically, in premises liability cases, an owner or occupier is subject to liability for injury to a lawful visitor resulting from a condition on the owner or occupier's premises if the lawful visitor proves (1) that the owner or occupier either created the condition, knew of the condition, or by exercise of reasonable care would have discovered the condition; (2) that the owner or occupier should have realized the condition involved an unreasonable risk of harm to the lawful visitor; (3) that the owner or occupier should have expected that the visitor either would not discover or realize the danger or would fail to protect himself or herself against the danger; (4) that the owner or occupier failed to use reasonable care to protect the visitor against the danger; and (5) that the condition was a proximate cause of damage to the visitor.[22] It follows that owners or occupiers have breached their duty if they know, or by exercise of reasonable care should have realized, that a condition on their land would create a risk from which visitors would fail to protect themselves.

[18,19] Though Nebraska has abolished the distinction between invitee and licensee, "it remains true that a land possessor is not liable to a lawful entrant on the land unless the land possessor had or should have had superior knowledge of the dangerous condition on the land."[23] Land possessors have a duty to attend "to the foreseeable risks in light of the then-extant environment, *including foreseeable precautions by others*."[24] This is true regarding all dangerous conditions on the land, but "'[k]nown or obvious dangers pose less of a risk than comparable latent dangers because those exposed can take precautions to protect themselves.'"[25]

---

[21] *Latzel v. Bartek*, 288 Neb. 1, 846 N.W.2d 153 (2014).

[22] *Aguallo v. City of Scottsbluff, supra* note 3.

[23] *Warner v. Simmons*, 288 Neb. 472, 478, 849 N.W.2d 475, 480 (2014).

[24] 2 Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 51, comment *a*. at 243 (2012) (emphasis supplied).

[25] *Warner v. Simmons, supra* note 23, 288 Neb. at 479, 849 N.W.2d at 480. See, also, 2 Restatement (Third) of Torts, *supra* note 24, § 51, comment *k*.

### (a) The Willers

We find that, even giving all reasonable inferences in favor of Cole, the Willers owed no duty to protect Cole from the type of injury that occurred. Without any duty, there is no breach that could have occurred. This finding is based on our conclusion that no reasonable person could find that the injury suffered by Cold was foreseeable from the installation of a culvert on adjoining property.

[20] Cole asserts that the Willers owe adjoining landowners a duty to provide for the passage of water from their land, and that the Willers breached that duty.[26] If a landowner builds a structure in a natural watercourse to provide for the water's passage through the landowner's property, that landowner does owe a duty to adjoining landowners to maintain the construction so that water will not be collected or damage another's property.[27] However, our law states that this duty is owed only to other landowners, and is used only to refer to damages caused to another's property.[28] Cole is not an adjoining landowner, and therefore, the duty articulated in *Bristol v. Rasmussen*[29] does not apply to Cole. We have not recognized, and do not now recognize, a duty to guests of an adjoining landowner to properly dispose of water from one's own land.

[21] Although the Willers owed no special duty to Cole, they still owed the most basic duty to conform to the legal standard of reasonable conduct in light of the apparent risk.[30] The expert witness could not state that the culvert was the cause of the rising levels in the Willers Cove lake, or of the overflow of the creek. Even assuming that Ronald could see that the installation of the culvert was causing some water to overflow from the creek, Ronald, in the position of an ordinary

---

[26] See *Bristol v. Rasmussen*, 249 Neb. 854, 547 N.W.2d 120 (1996).

[27] See *id*.

[28] See *id*. See, also, *LaPuzza v. Sedlacek*, 218 Neb. 285, 353 N.W.2d 17 (1984); *Leaders v. Sarpy County*, 134 Neb. 817, 279 N.W. 809 (1938).

[29] *Bristol v. Rasmussen, supra* note 26.

[30] *Desel v. City of Wood River*, 259 Neb. 1040, 614 N.W.2d 313 (2000).

person, would not foresee that an overflow from the creek would cause a dangerous condition in a separate body of water that would then cause a guest of that property to receive serious bodily injury.

We find that, giving all factual inferences in favor of Cole, the Willers could not have reasonably foreseen that by installing a culvert on their property, such culvert would cause flooding that would then cause sand in the bottom of the Willers Cove lake to move, which a visiting guest of another landowner would then proceed to dive into and receive life-altering injuries. Therefore, we affirm the district court's granting of summary judgment.

### (b) The WCOA

In contrast, we do find material issues of fact as to whether the WCOA knew of the condition, by exercise of reasonable care should have discovered the condition, or should have realized that a condition involved an unreasonable risk of harm to the lawful visitor.

[22] The WCOA owes to the lawful guest or visitor a duty to protect the visitor against those parts of the land which it has reason to know of, with reasonable care would have discovered, or should have realized involved an unreasonable risk of harm to the visitor.[31] In particular, since the WCOA would have, and should have, superior knowledge of lake conditions, there is some duty to use that knowledge to protect lawful visitors.[32]

The factual question then becomes whether or not this condition should have been foreseeable to the WCOA. Many material issues of fact are left undetermined when viewed in the light most favorable to Cole, and weigh into the foreseeability of Cole's injury. First, Cole claims the WCOA knew that the west side of the lake was unstable and that sand fell into the water. There is some evidence that this was discussed at meetings of the WCOA; however, we do not know if the WCOA recognized it as a dangerous condition for guests

---

[31] See *Aguallo v. City of Scottsbluff, supra* note 3.

[32] See *Warner v. Simmons, supra* note 23.

using the lake for swimming. This presents a material issue of fact, because if the WCOA knew the sand could create a dangerously shallow and unexpected condition in the lake, then it had a responsibility to implement safety precautions for its members and guests.

Cole also claims that the WCOA had a regulation keeping swimming to within 50 feet of the shore. However, the WCOA claims that this rule was abrogated by the time of the accident. Even if the rule were in effect, it is not clear whether its enforcement would have prevented Cole's accident. This presents a material issue of fact that is proper for the trier of fact, because if there was a rule in effect, but being improperly enforced by the WCOA, and that improper enforcement caused the injury to Cole, then the WCOA may be liable for negligence.

Finally, no witness can definitively state where the boat was in the lake when the accident occurred. Most witnesses think it was on the west part of the lake, but no witnesses know how far the boat was from shore. These are issues of material fact, because the distance of the boat from the shore would impact the foreseeability of the dangerously shallow condition in the lake.

### 3. Open and Obvious Doctrine

The district court found that the open and obvious doctrine applied to bar recovery from the WCOA, because the lake constituted an open and obvious condition and the WCOA could not have foreseen that such harm would come to someone in the position of Cole. We reverse this application of the open and obvious doctrine and remand the cause for a determination of the WCOA's negligence.

[23] Generally, when a dangerous condition is open and obvious, the owner or occupier is not liable in negligence for harm caused by the condition.[33] The rationale behind this rule is that the open and obvious nature of the condition gives caution and that therefore, the risk of harm is considered

---

[33] *Aguallo v. City of Scottsbluff, supra* note 3.

slight since reasonable people will avoid open and obvious risks.[34]

[24] Under the open and obvious doctrine, a possessor of land is not liable to his or her invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless* the possessor should anticipate the harm despite such knowledge or obviousness.[35]

[25,26] A condition is considered obvious when the risk is apparent to and of the type that would be recognized by a reasonable person in the position of the invitee.[36] In Nebraska, we have repeatedly held that a body of water is not a concealed, dangerous condition.[37] We have said: "It can be stated as a matter of fact that the public recognizes that bodies of water vary in depth and that sharp changes in the bottom may be expected."[38]

Here, Cole did not protect himself from the open and obvious condition—a lake of unknown depth. He admits in his deposition that he has knowledge of natural bodies of water and that their depth can vary greatly. Invitees must take available precautions to protect themselves from open and obvious dangers. Further, it is accepted as a fact by this court that members of the public know that natural bodies of water can vary in depth and that sharp changes in the bottom should be expected.[39] This hazard of a lake associated with risk of death and serious injury has been held to be appreciated even by children.[40] We agree with the lower court in its finding that the

---

[34] Restatement (Second) of Torts § 343A (1965).

[35] *Id*.

[36] 4 J.D. Lee & Barry A. Lindahl, Modern Tort Law: Liability and Litigation § 39:7 (2d ed. 2014).

[37] See, *Haden v. Hockenberger & Chambers Co.*, 193 Neb. 713, 228 N.W.2d 883 (1975); *Cortes v. State*, 191 Neb. 795, 218 N.W.2d 214 (1974); *Lindelow v. Peter Kiewit Sons', Inc.*, 174 Neb. 1, 115 N.W.2d 776 (1962).

[38] *Cortes v. State, supra* note 37, 191 Neb. at 799, 218 N.W.2d at 216-17.

[39] *Cortes v. State, supra* note 37.

[40] *Id*.

lake, as a body of water, "natural or artificial, . . . poses a well-known and clear risk of being dangerous."

[27] However, a determination that a danger is "open and obvious" does not end the analysis; a court must also determine whether the owner/occupier should have anticipated that persons using the premises would fail to protect themselves, despite the open and obvious risk.[41] As we have stated:

> Reason to anticipate harm from an open and obvious danger "may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk."[42]

In *Connelly v. City of Omaha*,[43] we found that the open and obvious doctrine did not apply to bar the City of Omaha's liability to the plaintiff. In *Connelly*, a young girl was paralyzed when she sledded down a hill in a city park into a tree on the right side of the hill. The City of Omaha argued that the tree was open and obvious and did not present an unreasonable risk of harm to sledders, who they assumed would have discovered the tree, realized the danger, and gone elsewhere to sled. However, we found that as an "entity operating a park that was open to the public and commonly used for sledding, the City should have expected the public to encounter some dangers which were not unduly extreme, rather than forgo the right to use the park for sledding."[44]

Similarly, in this case, the lake presented a danger which was not "unduly extreme," and since the lake was open for

---

[41] *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012).

[42] *Id*. at 142, 816 N.W.2d at 754. See, also, *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629 (1982).

[43] *Connelly v. City of Omaha, supra* note 41.

[44] *Id*. at 143-44, 816 N.W.2d at 755.

guests and members to swim, the WCOA should have expected the public to encounter some of the dangers associated with the open body of water. The lake is an inviting scene for people to use for swimming in the summer months. Swimming in itself is not a highly dangerous activity. And in order to swim, one must first get into the body of water. A common method of getting into bodies of water is jumping or diving. Especially where a person has already jumped and dove into the lake and assumes to know its depth, that person would not be expected to realize that there was an undue danger associated with diving into the water another time. Viewing these inferences in the light most favorable to Cole, we conclude that the district court erred in finding that the open and obvious doctrine applied, because the WCOA should have anticipated its guests to come into contact with the lake.

We reverse the lower court's finding that the open and obvious doctrine applied to bar the WCOA's liability and remand the cause to determine the negligence of the WCOA consistent with the instructions in this opinion.

## VI. CONCLUSION

We affirm the lower court's ruling as to the Willers, and reverse, and remand for further proceedings as to the Taylors and the WCOA.

Affirmed in part, and in part reversed and remanded for further proceedings.

Stephan, J., not participating.

———————

State of Nebraska, appellee, v.
Tiuana L. Johnson, appellant.
___ N.W.2d ___

Filed March 13, 2015.    No. S-14-245.

1. **Indictments and Informations.** A ruling on whether to allow a criminal information to be amended is made by the trial court in its discretion.
2. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.